87,595-01

# Tabeth Gardner

**DeWitt County District Clerk**
**307 N. Gonzales Street**
**Cuero, Texas 77954**
**Phone: (361) 275-0931**
**Fax No. (361) 275-0934**

Deputies:
**Esther Ruiz**
**Jessie Duruisseau**
**Rachael Hernandez**

Leonides Vasquez
Jennifer Gamez
Chelsea Kirkland



RECEIVED IN
COURT OF CRIMINAL APPEALS

October 23, 2017

**OCT 25 2017**

Court of Criminal Appeals
Cap. Station
P.O. Box 12308
Austin, Texas 78711

... document contains some
... that are of poor quality
... the time of imaging.

Deana Williamson, Clerk

IN RE: Cause No. 15-11-12,329-A
KIRK ROSS ENGLE
VS.
THE STATE OF TEXAS

Dear Sir:

    Enclosed please find the Clerk's Record on the Application for Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07 filed by the defendant in the above entitled and numbered cause.

Sincerely,

Tabeth Gardner
DeWitt County District Clerk

By _____
    Deputy

TMG/lv
Enclosure

xc: Mr. Kirk Ross Engle
    TDCJ # 2051545
    Hughes Unit
    Rt. 2 Box 4400
    Gatesville, Texas 76597

Mr. Robert C. Lassmann
District Attorney
DeWitt County Courthouse
Cuero, Texas  77954

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE 24TH JUDICIAL |
| VS. | X | DISTRICT COURT OF |
| KIRK ROSS ENGLE | X | DeWITT COUNTY, TEXAS |

CAUSE NO. 15-11-12,329-A

| | | |
|---|---|---|
| KIRK ROSS ENGLE | X | IN THE 24TH JUDICIAL |
| VS. | X | DISTRICT COURT OF |
| THE STATE OF TEXAS | X | DeWITT COUNTY, TEXAS |

KIRK ROSS ENGLE

VS.

THE STATE OF TEXAS

APPLICATION FOR WRIT OF HABEAS CORPUS

FROM DeWITT COUNTY

24TH JUDICIAL DISTRICT COURT

TRIAL COURT WRIT NO. 15-11-12,329-A
CLERK'S SUMMARY SHEET

**APPLICANT'S NAME: <u>KIRK ROSS ENGLE</u>**
(As reflected on the Judgment)

**OFFENSE: <u>AGGRAVATED ASSAULT WITH DEADLY WEAPON AND HABITUAL FELONY
OFFENDER</u>**
(As described on the Judgment)

**CAUSE NO.: <u>15-11-12,329</u>**
(As reflected in Judgment)

**SENTENCE: <u>February 11, 2016; Defendant found guilty of Aggravated Assault with Deadly Weapon
and Habitual Felony Offender, Defendant sentenced to serve FORTY (40) years in the Texas
Department of Criminal Justice and to pay court costs,</u>**
(As described on Judgment)

**TRIAL DATE: February 11, 2016**
(Date upon which sentence was imposed)

**JUDGE'S NAME:  <u>Hon. Juergen "Skipper" Koetter</u>**
(Judge Presiding at Trial)

**APPEAL NO.: <u>13-16-00270-CR</u>**
(If Applicable)

**CITATION TO OPINION: ____ S.W.2d**
(If Applicable)

**HEARING HELD:  __ YES  <u>X</u>  NO**
(Pertaining to the Application for Writ)

**FINDINGS & CONCLUSIONS FILED:  __ YES   <u>X</u>  NO**
(Pertaining to the Application for Writ)

**RECOMMENDATION:  ____ GRANT ____ DENY __ NONE**
(Trial Court's recommendation regarding Application)
See Order signed by Hon. Kemper Stephen Williams on September 20, 2017

**JUDGE'S NAME: <u>Hon. Kemper Stephen Williams</u>**
(Judge presiding over habeas proceeding)

## INDEX

### CAUSE NO. 15-11-12,329

| INSTRUMENT | PAGE |
|---|---|
| Indictment, filed November 9, 2015 | 1 |
| Defendant's Election as to Punishment, filed February 8, 2016 | 3 |
| Charge of the Court, filed February 9, 2016 | 4 |
| Trial Court's Certification of Defendant's Right of Appeal, filed February 11, 2016 | 9 |
| Judgment of Conviction by Jury, filed February 19, 2016 | 10 |
| Pauper's Oath and Order Appointing Attorney, filed February 19, 2016 | 14 |
| Defendant's Motion for New Trial, filed March 11, 2016 | 15 |
| Defendant's Notice of Appeal, filed May 12, 2016 | 18 |
| Defendant's Designation of the Clerk's Record, filed June 8, 2016 | 20 |
| Defendant's Designation of Supplemental Clerk's Record, filed July 5, 2016 | 23 |
| Order, filed July 20, 2016 | 26 |
| Memorandum Opinion, filed January 19, 2017 | 27 |
| Judgment, filed January 19, 2017 | 37 |
| Mandate, filed June 22, 2017 | 38 |
| Docket Sheets | 39 |

## INDEX

### CAUSE NO. 15-11-12,329-A

| INSTRUMENT | PAGE |
|---|---|
| Coverletter to the District Clerk, filed September 18, 2017 | 43 |
| Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07, filed September 18, 2017 | 44 |

Applicant's Motion Requesting the Portions of the Record That's Being Reference In his Writ of Applicant be Attached Hereto for all Purposes, filed September 18, 2017 .... 74

Memorandum Brief in Support of Writ for Habeas Corpus, filed September 18, 2017 .... 75

Notice to Parties, dated September 18, 2017 .... 91

Order on Writ of Application, filed September 22, 2017 .... 92

Notice to Parties, dated September 22, 2017 .... 93

Clerk's Certificate Under Art.11.07, SEC.2(c), V.A.C.C.P. .... 94

Docket Sheet .... 95

Certificate .... 96

No. 15-11-12,329          (D.A. Recommends Bond as set)

NAME:          Kirk Ross Engle
CHARGE:        Count I: Agg. Assault Deadly Weapon & Habitual Felon
               PC 22.02(a)(2) & 12.42, Agg. Felony
               Count II: Agg. Assault SBI & Habitual Felon
               PC 22.02 (a)(1) & 12.42, Agg Felony
               Count III: Assault Against Pubic Servant & Habitual Felon
               P.C. §22.02(a)(2)(B) & 12.42, Aggravated Felony
PUNISHMENT RANGE: 25 to 99 years or life TDCJ
COMPLAINANT:   State of Texas
DATE:          August 19, 2014
WITNESSES:     Troy Wilson
RE-INDICTMENT: 14-11-12,119

## TRUE BILL OF INDICTMENT

### IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURORS for the DeWitt County, Texas, duly selected, organized, impaneled and sworn as such at the July 2015 Term of the District Court of the 24th Judicial District, in and for said County, a quorum thereof being present, upon their oaths present in and to said Court that

### KIRK ROSS ENGLE

on or about August 19, 2014, and anterior to the presentment of this Indictment, in DeWitt County, Texas, did then and there intentionally and knowingly and recklessly use a deadly weapon, to-wit: a knife, that in the manner of its use and intended use, was capable of causing death and serious bodily injury, and did then and there intentionally and knowingly and recklessly cause bodily injury to BRIAN SMOLIK by stabbing the said BRIAN SMOLIK with said deadly weapon;

### COUNT II

And the Grand Jurors, duly selected, organized, sworn and impaneled as such for DeWitt County, Texas, at the July 2015 Term of the 24th Judicial District Court for said County, upon their oaths do further present in and to said Court that on or about August 19, 2014, and before the presentment of this Indictment, in DeWitt County, Texas, **KIRK ROSS ENGLE** did then and there intentionally and knowingly and recklessly cause serious bodily injury to BRIAN SMOLIK by stabbing him with a deadly weapon, to-wit: a knife, that in the manner of its use and intended use, was capable of causing death and serious bodily injury;

### COUNT III

And the Grand Jurors, duly selected, organized, sworn and impaneled as such for DeWitt County, Texas, at the July 2015 Term of the 24th Judicial District Court for said County, upon their oaths do further present in and to said Court that on or about August 19, 2014, and before the presentment of this Indictment, in DeWitt County, Texas, **KIRK ROSS ENGLE**, did then and there intentionally and knowingly and recklessly cause bodily injury to BRIAN SMOLIK by cutting the said BRIAN SMOLIK with a sharp object;

And the said KIRK ROSS ENGLE knew that the said BRIAN SMOLIK was a public servant, to-wit: a volunteer fireman for the Yorktown Fire Department, and the said offense was committed while BRIAN SMOLIK was lawfully discharging an official duty, to-wit: attempting to extinguish a fire;

**INDICTMENT: KIRK ROSS ENGLE, Page 1**

## ENHANCEMENT PARAGRAPHS

Before the commission of the offense alleged above, hereinafter styled primary offense,, KIRK ROSS ENGLE had been finally convicted of the felony offense of retaliation on March 6, 2000 in Cause No. 98-7-9112 in the 24th Judicial District Court of DeWitt County, Texas;

Before the commission of the primary offense and after the conviction in Cause No. 98-7-9112 above was final, the defendant, KIRK ROSS ENGLE, committed the felony offense of escape and repeat felony offender and was convicted of the same on February 21, 2008 in Cause No. 07-10-10,704 in the 24th Judicial District Court of DeWitt County, Texas;

Before the commission of the primary offense and after the convictions in Cause No. 98-7-9112 above was final, the defendant, KIRK ROSS ENGLE, committed the felony offense of driving while intoxicated, 3rd or more offense and was convicted of the same on February 21, 2008 in Cause No. 07-10-10,703 in the 24th Judicial District Court of DeWitt County, Texas;

against the peace and dignity of the State.

_____
Grand Jury Foreman

FILED
at ___ day of ___ o'clock ___ M
NOV 0 9 2015

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

THE FOLLOWING FOR DISTRICT CLERK'S USE ONLY

OFFENSE: I. AGG ASSLT DW
      II: AGG ASSLT SBI
     III: ASSAULT AGAINST PUBIC SERVANT
OFFENSE CODE: I: 13150005H; II: 13150004 H; III: 13990063 H

**INDICTMENT: KIRK ROSS ENGLE, Page 2**

02

**NO. 15-11-12,329 & 15-11-12,330**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 24th JUDICIAL DISTRICT |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

### DEFENDANT'S ELECTION AS TO PUNISHMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Kirk Ross Engle, the Defendant in the above styled and numbered cause, and, prior to the commencement of voir dire, elects for the Court to assess punishment in the event of conviction.

Respectfully submitted,

BRENT DORNBURG
120 N. Main St.
VICTORIA, TX 77901
Tel: (361) 570-4444
Fax: (361) 570-4471

By:
Brent Dornburg
State Bar No. 24003930
dornburg@gte.net
Attorney for Kirk Ross Engle

### CERTIFICATE OF SERVICE

This is to certify that on February 8, 2016, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, DeWitt County, by hand delivery.

Brent Dornburg

FILED
_____ day of _____
at _____ .20 o'clock ___ M
FEB 08 2016
TABETH GARDNER, Clerk
Dist. Court. DeWitt County. Texas
By_____ Deputy

03

NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | * | IN THE DISTRICT COURT OF |
| | * | |
| VS. | * | DeWITT COUNTY, TEXAS |
| | * | |
| KIRK ROSS ENGLE | * | 24TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

The defendant, Kirk Ross Engle, stands charged by indictment of the offense of aggravated assault, alleged to have been committed on or about August 19, 2014 in DeWitt County, Texas. The defendant has pleaded not guilty.

### I.

Our law provides that a person commits an assault if the person intentionally or knowingly causes bodily injury to another.

A person commits an aggravated assault if the person commits an assault, as defined above, and uses or exhibits a deadly weapon during the commission of the assault.

### II.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Serious bodily injury" means a bodily injury that creates a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

"Deadly weapon" means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

### III.

A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or

FILED

at 2:13 o'clock P. M

FEB 09 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

04

desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.

## IV.

Now, if you find from the evidence beyond a reasonable doubt that or about August 19, 2014, in DeWitt County, Texas, the defendant, KIRK ROSS ENGLE, did intentionally or knowingly use a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury; and did then and there intentionally and knowingly cause bodily injury to Brian Smolik by stabbing the said Brian Smolik with said deadly weapon, as alleged in the indictment, you will find the defendant guilty of aggravated assault, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty".

## V.

It is an affirmative defense to prosecution that, at the time of the conduct charged, the defendant, as a result of severe mental disease or defect, did not know that his conduct was wrong. You are instructed that insanity caused by involuntary intoxication by prescription medication is a defense to prosecution for an offense when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant and, as a result of his intoxication, he did not know that his conduct was wrong.

Such a condition of the defendant must have existed at the very time of the alleged commission of the offense.

By the term intoxication is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

The burden of proof is upon the defendant to prove this affirmative defense by preponderance of the evidence.

CHARGE OF THE COURT, Page 2

By the term preponderance of the evidence is meant the greater weight and degree of the credible evidence in this case.

## VI.

Now, if you believe from the evidence beyond a reasonable doubt that on or about August 19, 2014, in DeWitt County, Texas, the defendant, KIRK ROSS ENGLE, did then and there intentionally or knowingly use a deadly weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury; and did then and there intentionally and knowingly cause bodily injury to Brian Smolik by stabbing the said Brian Smolik with said deadly weapon, as alleged in the indictment, but you further find from the evidence by a preponderance of the evidence, that at such time the defendant was involuntarily intoxicated by prescription medication, and that he exercised no independent judgment or volition in taking the intoxicant, and that as a result of his intoxication he suffered a severe mental disease or defect and did not know that his conduct was wrong then you will acquit the defendant and say by your verdict "Not guilty by reason of insanity".

## VII.

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined or indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the Defendant, unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence in the case.

The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the Defendant.

CHARGE OF THE COURT, Page 3

06

## VIII.

You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions, and you must be governed thereby.

## IX.

After you retire to the jury room, you should select one of your members as your Foreman.  It is his duty to preside at your deliberations, vote with you, and when you have unanimously agreed upon a verdict, to certify to your verdict by using the appropriate form attached hereto, and signing the same as Foreman.

No one has any authority to communicate with you except the officer who has you in charge.  During your deliberations in this case, you must not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

After you have retired, you may communicate with this Court in writing through the officer who has you in charge.  Do not attempt to talk to the officer who has you in charge, or the attorneys, or the Court, or anyone else concerning any question you may have.  After you have reached a unanimous verdict, the Foreman will certify thereto by filling in the appropriate form attached to this charge and signing his name as Foreman.  After argument of counsel, you may retire to consider your verdict.

SIGNED this the __11__ day of February, 2016.


_____
JUDGE PRESIDING

CHARGE OF THE COURT, Page 4

07

**VERDICT FORM NO. 1**

We, the jury, find the defendant, KIRK ROSS ENGLE, **GUILTY** of aggravated assault with a deadly weapon, as alleged in the indictment.

_Tiffeny Chandler_
Foreman of the Jury

**FILED**

at _10:54_ o'clock _a_ M
_____ day of _____
FEB 11 2016
TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

**VERDICT FORM NO. 2**

We, the jury, find the defendant, KIRK ROSS ENGLE, **NOT GUILTY BY REASON OF INSANITY.**

_____
Foreman of the Jury

**VERDICT FORM NO. 3**

We the jury, find the defendant, KIRK ROSS ENGLE, **NOT GUILTY.**

_____
Foreman of the Jury

<u>**CHARGE OF THE COURT**</u>, Page 5

08

No. 15-11-12,329

| THE STATE OF TEXAS | § | IN THE 24TH JUDICIAL |
| | § | |
| v. | § | DISTRICT COURT |
| | § | |
| Kirk Ross Engle | § | DEWITT COUNTY, TEXAS |

Defendant

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

[ ✓ ] is not a plea-bargain case, and the defendant has the right of appeal. *[or]*

[ ] is a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right of appeal. *[or]*

[ ] is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal. *[ or ]*

[ ] is a plea-bargain case, and the defendant has NO right of appeal. *[or]*

[ ] the defendant has waived the right of appeal.

**FILED**

_____ day of _____

at 11:00 _____ o'clock _____

FEB 11 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, T

Judge

Date Signed: February 11, 2016

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, including any right to file a *pro se* petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals's judgment and opinion to my last known address and that I have only 30 days in which to file a *pro se* petition for discretionary review in the Court of Criminal Appeals. TEX, R. APP. P. 68.2. I acknowledge that, if I wish to appeal and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

X Kirk Engle

Defendant

Mailing address:

Defendant's Counsel

State Bar of Texas ID # 24003930

Mailing address: 12 W NN AN
VICTORIA, TX 7790

Telephone number:

Fax number (if any):

Telephone number: X 5904444

Fax number (if any): X 5904491

* "A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case -- that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant -- a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2).

effective 10/17/2011

09

CAUSE NO. 15-11-12,329   COUNT ONE

INCIDENT NO./TRN: 9116140087

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 24TH DISTRICT |
| | § | |
| | § | COURT |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |
| | § | |
| STATE ID NO.: TX04196082 | § | |

## JUDGMENT OF CONVICTION BY JURY

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. SKIPPER KOETTER | Date Judgment Entered: | 2/11/2016 |
| Attorney for State: | MICHAEL SHEPPARD AND REID MANNING | Attorney for Defendant: | BRENT DORNBURG |

Offense for which Defendant Convicted:

**AGGRAVATED ASSAULT WITH DEADLY WEAPON AND HABITUAL FELONY OFFENDER**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | **22.02(a)(2) and 12.42 Penal Code** |

Date of Offense:

**8/19/2014**

| Degree of Offense: | Plea to Offense: |
|---|---|
| **1ST DEGREE FELONY** | **NOT GUILTY** |
| Verdict of Jury: | Findings on Deadly Weapon: |
| **GUILTY** | **YES, NOT A FIREARM** |
| Plea to 1st Enhancement Paragraph: | **TRUE** | Plea to 2nd Enhancement/Habitual Paragraph: | **TRUE** |
| Findings on 1st Enhancement Paragraph: | **TRUE** | Findings on 2nd Enhancement/Habitual Paragraph: | **TRUE** |

| Punished Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
|---|---|---|
| **COURT** | **2/11/2016** | **2/11/2016** |

| Punishment and Place of Confinement: | **40 YEARS INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| $ N/A | $ 395.00 | $ N/A | ☐ VICTIM (see below) ☒ AGENCY/AGENT (see below) |

☒ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part hereof.

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. | | | | | |
|---|---|---|---|---|---|---|
| Time Credited: | From | to | From | to | From | to |
| | From | to | From | to | From | to |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. | | | | | |
| | **542 DAYS**   NOTES: **TOWARD INCARCERATION** | | | | | |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in         County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel  (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The INDICTMENT was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

**10**

The Court received the verdict and ORDERED it entered upon the minutes of the [illegible]

**Punishment Assessed by Jury / Court / No election  (select one)**

☐ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options  (select one)**

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the District Clerk, DeWitt County. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of            County, Texas on the date the sentence is to commence. Defendant shall be confined in the County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the            . Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the            County . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence  (select one)**

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

## Furthermore, the following special findings or orders apply:

**The Court finds Defendant used or exhibited a deadly weapon, namely a knife, during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. Tex. Code Crim. Proc. art. 42.12 section 3g.**

**Signed and entered on February 11, 2016**

X _Skipper Koetter_

SKIPPER KOETTER
JUDGE PRESIDING

Clerk: Tabeth Gardner, DeWitt County

The Defendant's print was ordered taken in accordance with Art. 38.33 of the Code of Criminal Procedure and appears on and is incorporated into this judgement as Exhibit "A".

Right Thumbprint

FILED

at 10:30 o'clock  A  M

FEB 19 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas

By                    Deputy

**11**

**FINGERPRINT EXHIBIT**, CCP 42.01, Sec 1(23)

CAUSE NO. **15-11-12,329**

THE STATE OF TEXAS                          IN THE DISTRICT COURT

VS.                                         24TH JUDICIAL DISTRICT

**KIRK ROSS  ENGLE**                        DEWITT COUNTY TEXAS



RIGHT THUMB PRINT

The fingerprint shown is a print of the above named defendant's right thumb taken by the undersigned in open court.

_Marion Zeeke_
Sheriff / District Clerk

By _____Deputy / Bailiff

DEWITT COUNTY, TEXAS

Exhibit "A"
Fingerprint Exhibit to Judgment

TDCA 2002

**12**

CAUSE NO. **15-11-12,329**

THE STATE OF TEXAS                    IN THE DISTRICT COURT

VS.                                   DeWITT COUNTY, TEXAS

**KIRK ROSS ENGLE**                  24TH JUDICIAL DISTRICT
**ATTACHMENT A**
**ORDER TO WITHDRAW FUNDS**

TO:   INMATE TRUST ACCOUNT, TEXAS DEPARTMENT OF CRIMINAL JUSTICE
COPY TO:   **KIRK ROSS ENGLE**

TDCJ #:_____ SID #:_____
GREETINGS:
THE ABOVE named Texas Department of Criminal Justice offender has of this date been assessed
court costs, fees and/or fines and/or restitution in the 24TH District Court of DEWITT County, Texas, in
the above entitled cause in accordance with the sentence imposed as reflected in the judgment to which
this Order is attached. The Court finds that the offender is unable to pay the court costs, fees and/or
fines and/or restitution on this date and that the funds should be withdrawn from the offender's Inmate
Trust Account. Court costs, fees and/or fines and/or restitution have been incurred in the amount of
$ _395.00_

THE COURT ORDERS that payment be made out of the offender's Inmate Trust
Account as follows:
   (1) 15% of the account balance up to and including $100, plus 25% of any
       portion of the account balance that is between $100.01 and $500 inclusive,
       plus 50% of any portion of the account balance that is more than $500; or
   (2) The total amount of court costs, fees and/or fines and/or restitution that
       remains unpaid.
After the payment of the initial amount, the offender shall pay an amount equal to the
lesser of:
   (1) 10% of each deposit in the offender's Inmate Trust Account; or
   (2) The total amount of court costs, fees and/or fines and/or restitution that
       remains unpaid.
Payments are to continue until the total amount of the court costs, fees and/or fines
and/or restitution are paid, or the offender is released from confinement.

On receipt of a copy of this Judgment, the department (Inmate Trust Account) shall withdraw money
from the trust account of the offender, hold same in a separate account, and shall forward said money to
the DEWITT County District Clerk, P.O. Box 845, Cuero, Texas 77954 on the earlier of the following
dates:

   (1) Monthly
   (2) The date the total amount to be forwarded equals the total amount which remains
       unpaid; or
   (3) The date the offender is released.

THIS ORDER is entered and incorporated into the Judgment and Sentence of this Court and pursuant
to Governmental Code, Section 501.014, on this _11th_ day of _February_, _2016_ 10:30 o'clock _A_

_Kipper Koetter_
Presiding Judge

**FILED**

FEB 19 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Dep.

13

CAUSE NO. 15-11-12329

| THE STATE OF TEXAS | * | IN THE DISTRICT COURT |
| --- | --- | --- |
| VS. | * | 24TH JUDICIAL DISTRICT |
| KIRK RUSS ENGLE | * | DeWITT COUNTY, TEXAS |

BEFORE ME, the undersigned authority, on this day personally appeared the defendant in this cause who, after being by me duly sworn, on oath deposes and says as follows: "I have been advised by the Court of my right to representation by counsel in the trial of the charge pending against me. I certify that I am without means to employ counsel of my own choosing and I hereby request the Court to appoint counsel for me. The following information concerning my resources is true and correct:

Total cash on hand or on deposit anywhere: _____ Ø _____

Income
(Amount/Source): _____ $730/month   SS Disblr _____

Spousal Income: _____ Ø _____

Dependents (# & ages): _____ Ø _____

Estimate of reasonable monthly living expenses: Medical - $16/r,m

Other property owned
(list with value): _____

_____

(Debts (creditor's name, amount owed & payments)

Further affiant sayeth not."

x _Kirk Engle_
Defendant

SWORN TO AND SUBSCRIBED TO before me by the Defendant on the 11th day of
February 2016.

_____
District Clerk of DeWitt County

By _____
Deputy

IT IS ORDERED that _LUIS MARTINEZ_ is appointed to represent the

defendant this the 11 day of February 2016.

_____
JUDGE PRESIDING

FILED
_____ day of _____
at 10.30 o'clock ___

FEB 19 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas

14

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 24TH JUDICIAL DISTRICT OF |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR NEW TRIAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

      **COMES NOW, KIRK ROSS ENGLE,** by and through his attorney of record, Luis A. Martinez and pursuant to Vernon's Annotated Rules of Appellate Procedure, Rule 21, files this, his Motion for New Trial, and would respectfully show the Court the following:

### I.

      Defendant was charged in a multi-count indictment with "Aggravated Assault with a Deadly Weapon and Habitual Felony Offender" Defendant pled "NOT GUILTY" and his matter was tried before a jury. On, or about, February 11, 2016, after considering the evidence and arguments of counsel, the jury convicted Defendant of Count I of the indictment.  After a sentencing hearing before the Trial Court, Defendant was sentenced by the Trial Court to 40 years in the Texas Department of Criminal Justice and costs of court.  Judgment and sentence was imposed on February 11, 2016.  Thirty days has not elapsed since the imposition of said sentence.

### II.

      Defendant objects and requests a new trial because the evidence provided by the State was insufficient to support the verdict of guilt in this matter, nor the sentence.  DEFENDANT

FILED

at _____ day of _____ o'clock ___ M

MAR 11 2016

**15**

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas

specifically objects to the verdict of guilt and sentence in this matter, because the evidence was both legally and factually insufficient to support the finding of guilt and the sentence. Put simply, the judgment and sentence in this matter is contrary to the evidence adduced at trial and the law applicable to this case.

### III.

Due to the above stated factors, the Defendant's rights as the accused in this case were jeopardized. Accordingly, the Defendant was not afforded a fair trial and respectfully requests a new trial.

**WHEREFORE, PREMISES CONSIDERED,** Defendant prays this Honorable Court set this Motion for New Trial for hearing, and after said hearing, that this motion be granted and the Defendant be given a new trial in this case.

Respectfully submitted,

Luis A. Martinez, P.C.
209 W. Juan Linn
P.O. Box 410
DEWITT, Texas 77902-0410
(361) 676-2750 (Telephone)
(361) 575-8454 (Telecopier)

By: _____

Luis A. Martinez
State Bar No. 24010213

***Attorney for Defendant,***
***KIRK ROSS ENGLE***

**16**

## CERTIFICATE OF SERVICE

By affixing my signature below, I do hereby certify that a true and correct copy of the above foregoing **MOTION FOR NEW TRIAL** delivered electronically on this 11th day of February, 2016, to the following:

_____
Luis A. Martinez

*Via Electronic Mail, rclassmann@sbcglobal.net*
Mr. Robert Lassmann
Asst. District Attorney
DeWitt County Courthouse
307 N. Gonzalez
Cuero, Texas 77954
*Attorney for the State on Appeal*

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 24TH JUDICIAL DISTRICT OF |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

## DEFENDANT'S NOTICE OF APPEAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, KIRK ROSS ENGLE,** by and through his court-appointed attorney of record, Luis A. Martinez, and files this, his NOTICE OF APPEAL, pursuant to Texas Rules of Appellate Procedure, Rule 25, and would respectfully show unto the Court the following:

### I.

Defendant, KIRK ROSS ENGLE, hereby gives written notice of appeal to the Court of Appeals for the Thirteenth Judicial District of Texas, from the judgment and verdict convicting him of the above-referenced offense in the trial court, as well as the sentence imposed in the trial court in the above-referenced and entitled cause of action.

Respectfully submitted,

Luis A. Martinez, P.C.
P.O. Box 410
Victoria, Texas 77902-0410
(361) 575-6764 (Telephone)
(361) 575-8454 (Telecopier)
Email: Lamvictoriacounty@gmail.com

By: _____

_____
Luis A. Martinez
State Bar No. 24010213

**FILED**

_____ day of _____
at _10:30_____ o'clock _a_ .M

MAY 1 2 2016

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

**18**

## CERTIFICATE OF SERVICE

By affixing my signature below, I do hereby certify that a true and correct copy of the above foregoing **Notice of Appeal** was delivered in the manner indicated on this 10th day of May, 2016, to those parties listed below.

_____

Luis A. Martinez

*Via Electronic Mail, rclassmann@sbcglobal.net*
Mr. Robert Lassmann
Asst. District Attorney
DeWitt County Courthouse
307 N. Gonzalez
Cuero, Texas  77954
*Attorney for the State on Appeal*

**19**

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 24TH JUDICIAL DISTRICT |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

## DEFENDANT'S DESIGNATION OF THE CLERK'S RECORD

COMES NOW, KIRK ROSS ENGLE, by and through his court-appointed counsel, LUIS A. MARTINEZ, and files this, his Defendant's Designation of the Clerk's Record. *See* Tex. R. App. Proc. 34.5. The Defendant respectfully requests that the Clerk of this Honorable Court make and prepare as a part of the record in the appeal of this cause true and correct copies of each of the following matters in this cause.

1. The indictment filed by the State of Texas, on or about, November 9, 2015;

2. The trial court's docket sheet with all notations;

3. State's Notice of Experts, filed on, or about, November 13, 2015;

4. Defendant's Motion to Transfer Pleadings;

5. Order on Defendant's Motion to Transfer Pleadings;

6. Waiver of Arraignment filed on, or about November 19, 2015;

7. Application to Issue Subpoenas filed on, or about February 2, 2016;

8. Motion in Limine filed on, or about, February 8, 2016;

9. Defendant's Election as to Punishment filed on, or about, February 8, 2016;

10. State's Motion in Limine filed on, or about, February 8, 2016;

11. Order filed on, or about, February 8, 2016;

**FILED**

at 8:29 o'clock Q M

JUN 0 8 2016

TABETH GARDNER, Clerk
Dist Court, DeWitt County, Texas
By _____ Deputy

'20

12. State's Strike List filed on, or about, February 8, 2016;

13. Defendant's Strike List filed on, or about, February 8, 2016;

14. Juror List filed on, or about, February 8, 2016;

15. Juror Note 1 filed on, or about, February 11, 2016;

16. Juror Note 2 filed on, or about, February 11, 2016;

17. Juror Note 3 filed on, or about, February 11, 2016;

18. Charge of the Court filed on, or about, February 9, 2016;

19. Trial Court's Certification of Right of Appeal filed on, or about, February 11, 2016;

20. Judgment of Conviction with Attachment A filed on, or about, February 19, 2016;

21. Order of Appointment filed on, or about, February 19, 2016;

22. Correspondence to Luis Martinez filed on, or about, February 26, 2016;

23. Defendant's Motion for New Trial filed on, or about, March 11, 2016;

24. Correspondence from Luis A. Martinez re: Notice of Appeal including original envelope filed on, or about, May 12, 2016;

25. Notice of Appeal filed on, or about, May 12, 2016.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that the Clerk of this Honorable Court make and prepare as part of the record in the appeal of this cause copies of all the aforementioned designated and requested matters and transmit them to the Court of Appeals.

Respectfully submitted,

Luis A. Martinez, P.C.
209 W. Juan Linn
P.O. Box 410
Victoria, Texas 77902-0410
(361) 676-2750 (Telephone)
(361) 575-8454 (Telecopier)

By: _____

Luis A. Martinez
State Bar No. 24010213

*Attorney for Defendant,*
*KIRK ROSS ENGLE*

## CERTIFICATE OF SERVICE

By affixing my signature below, I do hereby certify that a true and correct copy

of the above foregoing was delivered electronically on this 7th day of June, 2016, to the

following:

_____

Luis A. Martinez

*Via Electronic Mail, rclassmann@sbcglobal.net*
Mr. Robert Lassmann
Asst. District Attorney
DeWitt County Courthouse
307 N. Gonzalez
Cuero, Texas 77954
*Attorney for the State on Appeal*

22

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 24TH JUDICIAL DISTRICT |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

## DEFENDANT'S DESIGNATION OF SUPPLEMENTAL CLERK'S RECORD

COMES NOW, KIRK ROSS ENGLE, by and through his court-appointed counsel, LUIS A. MARTINEZ, and files this, his Defendant's Designation of Supplemental Clerk's Record. *See* Tex. R. App. Proc. 34.5. The Defendant respectfully requests that the Clerk of this Honorable Court make and prepare as a part of the record in the appeal of this cause true and correct copies of each of the following matters found in **Cause No. 14-11-12, 119.**

1.  The indictment filed by the State of Texas, on or about, November 21, 2014;

2.  The trial court's docket sheet with all notations;

3.  Appearance of Counsel filed January 9, 2015;

4.  Motion for Continuance filed April 23, 2015;

5.  Motion Suggesting Incompetency and Request for Examination filed April 23, 2015;

6.  Order for Incompetency Examination filed April 29, 2015;

7.  Competency Evaluation filed May 20, 2015;

8.  Motion to Substitute Counsel filed August 6, 2015;

9.  Order on Motion to Substitute Counsel filed August 13, 2015;

10. Motion for Continuance filed August 19, 2015;

11. Order on Motion for Continuance filed September 2, 2015;

**FILED**

_____ day of _____
at 1:10 _____ o'clock _____ M

JUL 0 5 2016

**2 3**

TABETH GARDNER, Clerk
Dist Court DeWitt County, Texas
By _____ Deputy

12. State's Motion for Disclosure of Names and Addresses of Defense Expert Witnesses filed September 8, 2015;

13. Motion to Strike Expert filed October 5, 2015;

14. Notice of Intent to Raise Insanity Defense filed October 6, 2015;

15. Correspondence from Reid Manning to Brent Dornberg filed October 13, 2015;

16. State's Motion for Psychiatric Examination of Defendant for Insanity filed October 29, 2015;

17. Order on State's Motion for Psychiatric Examination of Defendant for Insanity filed November 2, 2015;

18. Medical Records from Gulf Bend Center concerning Kirk Ross Engle filed November 12, 2015;

19. State's Notice of Experts filed November 13, 2015;

20. Medical Records from TDCJ concerning Kirk Ross Engle filed November 13, 2015;

21. Insanity Evaluation filed December 31, 2015;

22. Motion to Dismiss filed February 25, 2016.

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully requests that the Clerk of this Honorable Court make and prepare as part of the record in the appeal of this cause copies of all the aforementioned designated and requested matters and transmit them to the Court of Appeals in the above-captioned cause.

Respectfully submitted,

Luis A. Martinez, P.C.
209 W. Juan Linn
P.O. Box 410
Victoria, Texas 77902-0410

**24**

(361) 676-2750 (Telephone)
(361) 575-8454 (Telecopier)

By: _____

Luis A. Martinez
State Bar No. 24010213

**Attorney for Defendant,**
**KIRK ROSS ENGLE**

### CERTIFICATE OF SERVICE

By affixing my signature below, I do hereby certify that a true and correct copy

of the above foregoing was delivered electronically on this 30th day of June, 2016, to the

following:

_____

Luis A. Martinez

**Via Electronic Mail, rclassmann@sbcglobal.net**
Mr. Robert Lassmann
Asst. District Attorney
DeWitt County Courthouse
307 N. Gonzalez
Cuero, Texas 77954
**Attorney for the State on Appeal**

25

CAUSE NO. 15-11-12,329

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 24TH JUDICIAL DISTRICT |
| | § | |
| KIRK ROSS ENGLE | § | DEWITT COUNTY, TEXAS |

**ORDER**

The Defendant, KIRK ROSS ENGLE, by and through his court-appointed counsel, LUIS A. MARTINEZ, having filed a Defendant's Designation of Supplemental Clerk's Record. *See* Tex. R. App. Proc. 34.5, has requested certain items that are sensitive in nature and/or sealed and requested that the Trial Court order they be made part of the Clerk's Record in the appeal of this cause.

The Court finds and orders that the DeWitt County District Clerk compile and include the following items, that they be made part of the Clerk's Record and filed in the Court of Appeals, and marked as sensitive information for purposes of appeal:

1. Competency Evaluation filed May 20, 2015;

2. Medical Records from Gulf Bend Center concerning Kirk Ross Engle filed November 12, 2015;

3. Medical Records from TDCJ concerning Kirk Ross Engle filed November 13, 2015;

4. Insanity Evaluation filed December 31, 2015;

SIGNED THIS **20** DAY OF **July**, 2016.

_____
JUDGE PRESIDING

**FILED**

at _____ o'clock _____M

JUL 2 0 2016

TABETH GARDNER, Clerk
Dist. Court. DeWitt County, Texas
By_____ Deputy

26



## NUMBER 13-16-00270-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

KIRK ROSS ENGLE,                                              Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

---

### On appeal from the 24th District Court
### of DeWitt County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras,[1] and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Kirk Ross Engle appeals from his conviction for aggravated assault with

a deadly weapon, a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(a)(2) (West,

Westlaw through 2015 R.S.), with a finding of habitual offender status.   *See id.* § 12.42

---

[1] Justice Dori Contreras, formerly Dori Contreras Garza.   *See* TEX. FAM. CODE ANN. § 45.101 *et
seq* (West, Westlaw through 2015 R.S.).

FILED
_____ day of _____
at  11.12 ...... o'clock  P. M

JAN 1 9 2017

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By Rachael Hernandez

27

(West, Westlaw through 2015 R.S.).   By one issue, Engle contends that the trial court erred when it limited his expert's testimony.   We affirm.

## I.   BACKGROUND

Engle was charged with aggravated assault with a deadly weapon, with enhancement paragraphs alleging habitual offender status.   Throughout his jury trial, Engle did not dispute his role in the aggravated assault with a deadly weapon.   He based his trial strategy on the affirmative defense of involuntary intoxication.[2]

Although the jury charge included a definition of involuntary intoxication and an option of finding Engle not guilty by reason of insanity, the jury found Engle guilty of aggravated assault with a deadly weapon.   The trial court conducted the punishment hearing and found all three enhancement paragraphs to be true.   The court assessed Engle's punishment at forty years in the Institutional Division of the Texas Department of Criminal Justice.   Engle appeals from this judgment.

## II.   LIMITATION OF DEFENSE EXPERT'S TESTIMONY

In his sole issue, Engle generally complains that the trial court abused its discretion when it limited the testimony of his expert, Thomas Demoor, M.D., by not allowing him to testify fully and completely about an element of the involuntary intoxication defense—specifically whether Engle knew that his conduct was wrong.   Engle contends that by limiting Dr. Demoor's testimony, the trial court stopped him from proving his affirmative defense.   He claims that his constitutional right to due process was violated because Dr. Demoor's testimony was "critical to the heart of [his] trial defense."

---

[2] It is undisputed that Engle notified the State of his intent to raise an insanity defense.

2

## A.    Standard of Review

We review a trial court's evidentiary rulings to admit or exclude evidence for an

abuse of discretion.   *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).

A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without

reference to guiding rules or principles.   *See State v. Mechler*, 153 S.W.3d 435, 439

(Tex. Crim. App. 2005).   This Court examines the trial court's decision in light of what

was before the trial court at the time the decision was made.   *See Weatherred v. State*,

15 S.W.3d 540, 542 (Tex. Crim. App. 2000).   We will uphold that decision if it is

reasonably supported by the record and correct under any theory of law applicable to the

case.   *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

## B.    Applicable Law

Section 8.01 of the Texas Penal Code, which encompasses the defense of insanity

due to involuntary intoxication, provides that "it is an affirmative defense to prosecution

that, at the time of the conduct charged, the actor, as a result of severe mental disease

or defect, did not know that his conduct was wrong."   TEX. PENAL CODE ANN. § 8.01(a)

(West, Westlaw through R.S. 2015); *Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim.

App. 2002).   The elements needed to establish an involuntary intoxication affirmative

defense include:   (1) the accused exercised no independent judgment or volition in taking

the intoxicant; and (2) as a result of a severe mental disease or defect caused by the

involuntary intoxicant, the accused did not know that his conduct was wrong.

*Mendenhall*, 77 S.W.3d at 818; *see Farmer v. State*, 411 S.W.3d 901, 911–12 (Tex. Crim.

App. 2013) (Cochran, J., concurring); *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim.

3

29

App. 1979); *see also* TEX. PENAL CODE ANN. § 8.01(a).   "Involuntary intoxication by

prescription medicine occurs only when the person has no knowledge that the medicine

has possibly intoxicating side effects."   *Woodman v. State*, 491 S.W.3d 424, 429 (Tex.

App.—Houston [14 Dist.], 2016, pet. ref'd) (citing *Mendenhall v. State*, 15 S.W.3d 560,

565–66 (Tex. App.—Waco 2000), *aff'd*, 77 S.W.3d 815 (Tex. Crim. App. 2002)); *Nelson*

*v. State*, 140 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.).

## C.   Analysis

### 1.   The Trial Court Properly Sustained the State's State-of-Mind Objection

Engle first contends that the trial court abused its discretion when it did not allow

Dr. Demoor to opine that Engle "was not able to appreciate right from wrong because of

involuntary intoxication."   On direct examination, Dr. Demoor provided the following

testimony relevant to the State's objection that Dr. Demoor disqualified himself from

testifying regarding Engle's state of mind:

Q.   Can you tell this jury what procedures you go through in examining someone to determine their legal sanity at the time they committed a crime.

A.   Well, legal sanity is a very narrowly defined topic and what some people are used to hearing is called not guilty by reason of insanity, that might be more familiar to what you've heard.   And for somebody to be not guilty by reason of insanity they have to have such severe mental illness that they can no longer tell right from wrong.   And it's very few people that are so severely mentally ill that they can't tell right from wrong.   To evaluate for that you're trying to assess what actions they did and whether a mental illness caused them to not realize that the actions they did were wrong.

Q.   Did you conduct such an examination on Mr. Engle?

A.   You know, technically I did not because we were not looking at

4

criminal insanity. I didn't see any evidence to support not guilty by reason of insanity. I wasn't looking for that. I was looking for what we thought of as involuntary intoxication..

. . . .

Q.    Okay. You had mentioned that you didn't know the straight insanity but then you started to mention involuntary intoxication.

A.    Well, that was the question that I was evaluating, yes.

Q.    And I think when you reported was insanity, too, for voluntary intoxication?

THE REPORTER: I'm sorry. Would you start again.

Q.    Was it your understanding through to involuntary intoxication?

A.    I didn't use the term insanity, I did believe he suffered from involuntary intoxication due to his medication and that led to a manic state that caused his aggressive outburst.

Q.    And did it lead to a state where he didn't know what he was doing was wrong?

[THE STATE]: I object, Your Honor. The witness has already testified he did not evaluate for that.

THE COURT: Sustained.

A.    Can I revise? I mean . . . I looked at the records, I talked to the individual. I didn't know—I didn't notice that he didn't know it was wrong or whether it was wrong or right, I didn't—I didn't ask that question. He had amnesia for the event so I couldn't really ask what his state of mind was at the time of the event.

. . . .

THE COURT:        We're going to break for lunch. I'm going to ask that you be back in the jury room, ready to proceed, at 1:25. We'll be in recess until then.

(Jury recessed.)

5

**31**

THE COURT:      My understanding . . . is this is a two-prong test. One is was he involuntarily intoxicated and as a result of that involuntary intoxication did he lose an awareness of right and wrong, so this doctor has testified that he didn't evaluate him for losing an awareness of right and wrong. So he can talk about involuntary intoxication but he has very eloquently and honestly said I didn't evaluate him for whether he knew what he was doing was right or wrong. So I can't—we can't go off into that. I want to make sure you understand that. He can no longer testify about whether or not Mr. Engle knew what he was doing and knew whether it was right or wrong. He can talk about whether he was involuntarily intoxicated. . . . But that's where I think we are in the evidence at this point, so I just want to make sure that everybody understood where I think we are and that my rulings are going to be based on that understanding of what the doctor has told me, that he didn't evaluate him for whether or not he was aware of the right or wrong nature of his actions.

. . . .

(Open court, defendant and jury present.)

THE COURT:      You may be seated. . . .

Q.    Doctor, do you remember when we left off you had mentioned involuntary intoxication; is that correct?

A.    Yes.

Q.    What exactly is involuntary intoxication?

A.    In this context involuntary means that he didn't have a choice to refuse to take a substance. Intoxication means that a substance altered his emotional and mental well-being.

Q.    And did you see evidence of that in this situation with Mr. Engle?

A.    Yes.

Q.    Now, back to—you said that you didn't see any evidence of insanity in this case, correct?

A.    Well, that I didn't evaluate him specifically.

6

32

Q.     Okay.   And why was that?

A.     Because he told me he didn't remember the event and I couldn't evaluate his state of mind at the time of the event.

Q.     So because he had amnesiatic [sic] about it . . . .

A.     He testified—he said he had blackouts, which we use the term amnesia.

Q.     So you reviewed other things in relation to this case, though?

A.     Yes.

Q.     What all did you review?   Offense reports?

A.     I reviewed his medical records from the MHMR in Victoria.   I reviewed the witness statements from the assault, I guess offense reports.   I did review [the State's expert's] reports.   There might be a few other things.

. . . .

[DEFENSE]:        Pass the witness.

Examining the trial court's decision in light of what was before the trial court at the time the decision was made, see *Weatherred*, 15 S.W.3d at 542, we cannot conclude that the trial court's decision to sustain the State's objection regarding state-of-mind testimony was arbitrary, unreasonable, or without reference to guiding rules or principles.   *See Mechler*, 153 S.W.3d at 439.   Clearly, Dr. Demoor testified that he did not evaluate Engle's state of mind at the time of the event.   Dr. Demoor explained that he could not testify regarding Engle's state of mind because Engle told him that he "didn't remember the event."   It is apparent that the trial court understood that this testimony related to insanity due to a mental disease or defect or to insanity due to the involuntary intoxicant that caused the severe mental disease or defect.   *See Mendenhall*, 77 S.W.3d at 818;

7

33

*see also* TEX. PENAL CODE ANN. § 8.01(a).   Based on Dr. Demoor's explicit testimony, the trial court sustained the State's objection that this expert had already testified he did not evaluate Engle for whether he knew that his conduct was wrong.   *See Mendenhall*, 77 S.W.3d at 818.   The trial court's decision to exclude any state-of-mind testimony from Dr. Demoor is reasonably supported by the record, especially in light of the expert's unequivocal testimony that Kyle "didn't remember the event" so he "couldn't evaluate his state of mind," and the trial court's reasoning as expressed to counsel outside the presence of the jury.   *See Willover*, 70 S.W.3d at 845.   The decision is correct based on a theory of law related to the admissibility of evidence.   *See id.*   We conclude that the trial court did not abuse its discretion in excluding Dr. Demoor's opinion testimony regarding Engle's state of mind.   *See Shuffield*, 189 S.W.3d at 793.[3]

**2.      The Trial Court Did Not Rule on the State's Relevancy Objection**

Engle also asserts that the trial court erred in sustaining the State's relevancy objection to the following testimony provided by Dr. Demoor during his direct examination:

Q.      Are you familiar with Lexapro?

A.      Yes.

Q.      What is Lexapro prescribed for?

A.      It's prescribed for depression and anxiety.

Q.      Was this a proper case to prescribe Lexapro for?

---

[3] The State also objected to the following question Engle asked of Dr. Demoor:  "And you said you didn't see any evidence of insanity because you couldn't talk to him directly about it.   Were there other indications, though, that there's a possibility or probability that he could have been insane at the time of the alleged offense?"   The trial court sustained the State's objection that Dr. Demoor had "already testified he did not evaluate for that."   On appeal, Engle does not argue the appropriateness of the State's objection to his question regarding "other indications . . . that he could have been insane" and does not challenge the trial court's ruling on this objection.   So we do not address it.   *See* TEX. R. APP. P. 47.1.

8

A.    It's a debatable question.   Lexapro is not approved for use in bipolar depression and in my opinion Mr. Engle suffers from bipolar disorder, as was the opinion of the doctor at MHMR, Dr. Dotter. Antidepressants are used at times in bipolar depression but they have to be [used] very cautiously, with very clear instructions to monitor for increasing agitation or irritability or aggression and to notify the doctor or to stop the medicine if that happens.   That's my experience of using that type of medicine for bipolar depression.

Q.    And so in using it for bipolar depression, in reviewing the—what all did you review in looking at . . . .

[THE STATE]:      Your Honor, I'm going to object.   I don't think it's relevant.   The only relevance of this witness's testimony has to do with the analysis for the issue of insanity, not for bipolar depression.

Although Engle contends that the trial court sustained the State's relevancy objection, we find nowhere in the record where the court expressly or impliedly adversely ruled on this objection.   *See* Tex. R. App. P. 33.1; *see also* Tex. R. Evid. 401.   After the State objected, the trial court excused the jury and addressed the State's challenge to Dr. Demoor state-of-mind testimony.   Defense counsel simply chose not to continue questioning Dr. Demoor about the prescription medicine.   So Engle has no basis for his complaint that "he was stopped from proving how Lexapro affects sufferers of bipolar disorder."   *See* Tex. R. App. P. 33.1(a).

### 3.    Determination

Having concluded that the trial court properly sustained the State's state-of-mind objection and that Engle has no basis for a complaint about the State's relevancy objection, we overrule Engle's sole appellate issue.

9

35

## III.   CONCLUSION

We affirm.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of January, 2017.

10

36



# THE THIRTEENTH COURT OF APPEALS

---

13-16-00270-CR

---

Kirk Ross Engle
v.
The State of Texas

---

On appeal from the
24th District Court of De Witt County, Texas
Trial Cause No. 15-11-12,329

---

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

January 19, 2017

FILED

at \_\_\_\_\_ day of \_\_\_\_\_ o'clock \_\_\_\_ M

JAN 1 9 2017

ELIZABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By \_\_\_\_\_ Deputy

37

FILE COPY

# M A N D A T E

TO THE 24TH DISTRICT COURT of DEWITT COUNTY, GREETINGS:

Before our Court of Appeals for the Thirteenth District of Texas, on the 19th day of January, 2017, the cause upon appeal to revise or reverse your judgment between

Kirk Ross Engle,                                                                                    Appellant,

v.

The State of Texas,                                                                               Appellee.

CAUSE NO. 13-16-00270-CR                                          (Tr.Ct.No. 15-11-12,329)

was determined; and therein our said Court made its order in these words:

THE THIRTEENTH COURT OF APPEALS, having considered this cause on

appeal, concludes that the judgment of the trial court should be AFFIRMED.  The Court

orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

★ ★ ★ ★ ★ ★ ★

WHEREFORE, WE COMMAND YOU to observe the order of our said Court of Appeals for the Thirteenth District of Texas, in this behalf, and in all things have it duly recognized, obeyed and executed.

WITNESS, the Hon. Rogelio Valdez, Chief Justice of our Court of Appeals, with the seal thereof affixed, at the City of Edinburg, Texas this 22nd day of June, 2017.

*Dorian E. Ramirez*

Dorian E. Ramirez, CLERK

FILED

at __6.05__ o'clock __P__ M

JUN 2 2 2017

ELIZABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

38

# CRIMINAL DOCKET

No. 15-11-12,329

**R/W INC. DALLAS FORM CD**

| Number of Case | STYLE OF CASE<br>THE STATE OF TEXAS<br>vs. | ATTORNEYS | OFFENSE | | | | |
|---|---|---|---|---|---|---|---|

| Date of Orders | | Was Stenographer Used | | ORDERS OF COURT | | Minute Book | | WITNESSES |
|---|---|---|---|---|---|---|---|---|
| Month | Day | Year | | | | Vol. | Page | |

15-11-12,329

Michael A. Sheppard

Kirk Ross Engle

Brent Donburg

Luis A. Martinez —

Defendant

State: Counsel: Aleph Alonso

Count I: Capital Felony

Count II: Capital Felony

Count III: Unlawful Deposit

Public Servant

Capital Felony

**DATE OF FILING**

| Month | Day | Year |
|---|---|---|
| 11 | 9 | 2015 |

Information, Index or Indictment

Vol. ___ Fee Book
Page

**Nov. 9, 2015** Case set for arraignment December 3, 2015.

**Nov. 12, 2015** Defendant's attorney present. Order of Reset signed setting case on the plea docket December 3, 2015 and for trial December 7, 2015. **KSW-Norrell**

**Nov. 13, 2015** Carry over bond, so ordered. **KSW**

**Nov. 19, 2015** Waiver of Arraignment signed. Order signed on Kirk Ross Engle's Motion to Transfer Pleadings and Court Reporter's Notes granted. **KSW**

**Dec. 3, 2015** Defendant's attorney present. Order of Reset signed setting case on the motion docket January 20, 2016 and for trial February 8, 2016. **JPK-Gabrysch**

39

STATE OF TEXAS

VS. NO. 15-11-12,329

Kirk Ross Engle

| Date of Orders | | | ORDERS OF COURT | Minute Book | | PROCESS |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Vol. | Page | |
| | | | **Jan. 20, 2016** Defendant's attorney present. Case set previously. **JSK-Miori** | | | |
| | | | **Feb. 8, 2016** Defendant and his attorney present. Pre-Trial motions heard. The Court ruled as per record. The Jury panel seated, sworn and qualified. Voir dire began. Voir dire completed. Jury seated. The Court thanked and released the remaining Jury panel. The Court read instructions to the Jury, Jury sworn and released until 9:00 a.m. on February 9, 2016. **JSK-Miori** | | | |
| | | | **Feb. 9, 2016** Defendant and his attorney present. The Jury seated. The State read the Indictment. The Defendant entered a plea of Not Guilty to all Counts in the Indictment. The State made opening statements. Witnesses presented. Court in recess until 9:00 a.m. February 10, 2016. **JSK-Miori** | | | |
| | | | **Feb. 10, 2016** Defendant and his attorney present. The Jury seated. The State rested. Defense made opening statements. Witnesses presented. State and Defense rest and close. Court in recess until 9:00 a.m. on February 11, 2016. **JSK-Miori** | | | |
| | | | **Feb. 11, 2016** Defendant and his attorney present. The Jury seated. The Court reads the Charge of the Court. Closing statements given. The Jury retired to deliberate at 10:06 a.m. The Jury returned with verdict at 10:50 a.m. "We, the jury, find the defendant, KIRK ROSS ENGLE, **GUILTY** of aggravated assault with a deadly weapon, as alleged in the indictment." Tiffany Chandler, Foreman of the Jury. The Court thanked and released the Jury. The State read the enhancement paragraphs. The Defendant entered a plea of True to paragraphs. The State presented evidence. State rested. Defense presented witnesses. State and Defense rest and close. The Court assessed and sentenced the Defendant to FORTY (40) years in the Texas Department of Criminal Justice. Finding the use of a deadly weapon knife. The Court advised Defendant of his right to appeal. Trial Court's Certification of Defendant's Right of Appeal signed. Attachment A Order to Withdraw Funds attached to Judgment. **JSK-Miori** | Abst. | See Next Page | |
| | | | **Feb. 11, 2016** Order signed appointing Luis Martinez to represent the defendant on appeal signed. **JSK** | | | |

40

# CRIMINAL DOCKET

pg. 2

No. 15-11-12,329

| DATE OF FILING | | |
|---|---|---|
| Month | Day | Year |
| 102 | 9 | 2015 |
| Information, Index or Indictment | | |
| | | |
| Fee Book | | |
| Vol. | | Page |
| | | |
| Minute Book | | |
| Vol. | Page |

**Number of Case:** 15-11-12,329

**Le Indictment** 14-11-12,119

**STYLE OF CASE**

THE STATE OF TEXAS
vs.
Kirk Ross Engle

**ATTORNEYS**

Michael A. Sheppard

Luis A. Martinez

**OFFENSE**

Count I: Agg. Assault Deadly Weapon + Habitial Felon

Count II: Agg. Assault 351.9 Habitial Felon

Count III: Assault Public Servant Habitial Felon

**Was Stenographer Used**

**ORDERS OF COURT**

**WITNESSES**

| Date of Orders | | | ORDERS OF COURT |
|---|---|---|---|
| Month | Day | Year | |

**March 11, 2016** Defendant's Motion for New Trial filed.

**May 12, 2016** Defendant's Notice of Appeal filed.

**June 8, 2016** Clerk's Record filed electronically with the 13th Court of Appeals.

**July 20, 2016** Order on Defendant's Designation of Supplemental Clerk's Record signed. **KSW**

**July 21, 2016** Supplemental Clerk's Record filed electronically with the 13th Court of Appeals.

**July 21, 2016** Second Supplemental Clerk's Record filed electronically with the 13th Court of Appeals.

**July 21, 2016** Third Supplemental Clerk's Record filed electronically with the 13th Court of Appeals.

41

STATE OF TEXAS

VS. NO. 15-11-18,389

Kirk Wesley Engle

| Date of Orders | | | ORDERS OF COURT | Minute Book | | PROCESS |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Vol. | Page | |
| January 19, 2017 | | | The Judgment of the trial court AFFIRMED. Judgment and Memorandum Opinion filed. | | | |
| June 22, 2017 | | | The Judgment of the trial court AFFIRMED by this court. Mandate filed. | | | |

42

District Clerk
DeWitt County
307 N. Gonzales St.
Cuero,TX.77954

September 18,2017

RE: The State of Texas
    v.
    Kirk Ross Engle
    Cause No.15-11-12,329 in the 24th Judicial District Court of DeWitt County

Dear, Clerk:

    Enclosed, please find an ordiginal copy of Mr. Engle's Art.11.07 Application

for Writ of Habeas Corpus with reference to Cause No. 15-11-12,329.

    Also attached to the Writ are Applicant's (1) motion requesting that the

record be attached, (2) the Thirteenth Court of Appeals Memorandum Opinion,

and (3) Applicant's Memorandum of Law.

    Please file, date, and stamp these document's. Thank you for your

courtesies regarding this matter. My information is as follows.

Kirk Ross Engle
Hughes Unit
Rt.2 Box 4400
Gatesville,TX.76597
United States

*Kirk R. Engle*

FILED

____ day of ____

at _10:30_ o'clock _A_ M

SEP 18 2017

TABETH GARDNER, Clerk
Dist. Court, DeWitt County Texas
By _____ Deputy

Case No. 15-11-12,329

(The Clerk of the convicting court will fill this line in.)

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

**NAME:** Kirk Ross Engle

**DATE OF BIRTH:** 11-30-1970

**PLACE OF CONFINEMENT:** Hughes Unit

**TDCJ-CID NUMBER:** 2051545     **SID NUMBER:** 04196082

**(1)** **This application concerns** (check all that apply):

    ☒ a conviction      ☐ parole

    ☒ a sentence      ☐ mandatory supervision

    ☐ time credit      ☐ out-of-time appeal or petition for discretionary review

**(2)** **What district court entered the judgment of the conviction you want relief from?** (Include the court number and county.)

In The 24th Judicial District Court of DeWitt County, Texas

**(3)** **What was the case number in the trial court?**

15-11-12,329

**(4)** **What was the name of the trial judge?**

Hon. Joergen "Skipper" Koetter

FILED

___ day of

at 10.30 o'clock a. M

SEP 1 8 2017

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

Effective: January 1, 2014      1      Rev. 01/14/14

44

(5)    **Were you represented by counsel? If yes, provide the attorney's name:**

Brent Dornburg

(6)    **What was the date that the judgment was entered?**

February 11,2016

(7)    **For what offense were you convicted and what was the sentence?**

Aggravated Assault with a Deadly Weapon (40) years

(8)    **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each court?**

N/A

N/A

(9)    **What was the plea you entered?** (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
☒ not guilty               ☐ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**

N/A

N/A

(10)   **What kind of trial did you have?**

☐ no jury                  ☐ jury for guilt and punishment
                           ☒ jury for guilt, judge for punishment

2

**(11)**  **Did you testify at trial?  If yes, at what phase of the trial did you testify?**

Innocence/Guilt

**(12)**  **Did you appeal from the judgment of conviction?**

☒ yes                    ☐ no

If you did appeal, answer the following questions:

**(A)  What court of appeals did you appeal to?**   13th Court of Appeals

**(B)  What was the case number?**   13-16-00270-CR

**(C)  Were you represented by counsel on appeal?  If yes, provide the attorney's name:**

Luis A. Martinez

**(D)  What was the decision and the date of the decision?**   Affirm  1-19-2017

**(13)**  **Did you file a petition for descretionary review in the Court of Criminal Appeals?**

☒ yes                    ☐ no

If you did file a petition for discretionary review, answer the following questions:

**(A)  What was the case number?**   PD-0191-17

**(B)  What was the decision and the date of the decision?**   Refused  5-24-2017

**(14)**  **Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction?***

☐ yes                    ☒ no

If you answered yes, answer the following questions:

**(A)  What was the Court of Criminal Appeals' writ number?**   N/A

3

**(B)** What was the decision and the date of the decision?   N/A

**(C)** Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

N/A
_____

N/A
_____

N/A
_____

N/A
_____

**(15)** Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                    ☒ no

If you answered yes, please provide the name of the court and the case number:

N/A
_____

**(16)** If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                    ☐ no

If you answered yes, answer the following questions:

**(A)** What date did you present the claim?   N/A

**(B)** Did you recieve a decision and, if yes, what was the date of the decision?

N/A
_____

If you answered no, please explain why you have not submitted your claim:

4

N/A
_____

N/A
_____

N/A
_____

N/A
_____

N/A
_____

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

**48**

## GROUND ONE:

INEFFECTIVE ASSISTANCE OF COUNSEL

6TH & 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

## FACTS SUPPORTING GROUND ONE:

Applicant was denied the effective assistance of counsel during trial because counsel failed to object to the prosecutor's egregious acts of misconduct. See (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). The record in this case will reflect that a state's witness [Texas Ranger Troy Wilson] commented on the Applicant's post-arrest silence in violation of the Applicant's right to remain silent. id. The prosecutor made repeated references to the Applicant's post-arrest silence. id. A defendant has a Constitutional right to remain silent, and under Griffin v. California, 380 U.S. 609 (1965): A prosecutor is prohibited from commenting on the accussed's post-arrest silence. Id. at 615. The record is clear of this Constitutional right being violated. id. The prosecutor was allowed to use evidence of the Applicant's silence during his trial. id. This was some of the evidence that was used to help convict the Applicant. id. Counsel set silent as the prosecutor made repeated references to the Applicant's post-arrest silence. id. In this case, defense counsel's inaction's allowed the jury to equate the Applicant's silence with guilt. id. The prosecutor used the Applicant's silence to rebut his sole defense of insanity. id. There is no reasonable tactical basis not to object to these comments. id. On the contrary, a motion for a mistrial would have been appropriate and should have been made. id. The failure to object to these improper and prejudicial statements constitutes ineffective assistance of counsel. See Strickland v. Washington, 104 S.Ct. 2052 (1984). See also Applicant's memorandum of law attached hereto for all purposes.

6

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

7

**GROUND TWO:**

APPLICANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FUNDAMENTALLY FAIR TRIAL

14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

**FACTS SUPPORTING GROUND TWO:**

The trial court deprived the Applicant of the opportunity to present a complete defense. See (4 R.R.126). Due process includes a right to a meaningful opportunity to present a complete defense. In this case, it is clear that the trial court limited Dr. Demoor's testimony. id. Such testimony was relevant because it provided background and contextual information that would have been useful and helpful to the jury in assessing the relative credibility of Applicant's testimony (4 R.R.16-103) Nancy Hoesk's testimony (4 R.R.103-110) & Lupe Garcis's testimony (4 R.R.110-119). The excluded testimony was critical to the defense since defense counsel failed to contest the state's witnesses in regards to the incident. It is also undisputed that the Applicant was pursuing an insanity defense. In this case, the trial court did not act with respect to any guiding rule or principle in limiting and essentially keeping Applicant's expert witness from testifying fully and completely as to both prongs of the involuntary intoxication defense. See (4 R.R.125). In fact, the trial judge did not focus on the probative value or the potential adverse effects of limiting the defense expert witness testimony. id. Thus, the ruling limiting Applicant's expert witness from testifying to his mental state was erroneous, and was also reversible error due to a state's evidence rule which was applied in a manner which infringed upon a weighty interest of the accussed [hence] his Constitutional right to present a defense. In this case, the trial court prevented Applicant from presenting his version of the facts to the jury. id. Applicant will contend that the trial court violated his right to put on a complete defense when it limited his expert testimony. id. Applicant was thus denied a substantial defense. id. The

8

Constitution Guarantees criminal defendant's a meaningful opportunity to present a complete defense. See Crane, supra, at 690, 106 S.Ct. 2141 (1984). The 13th Court of Appeals decision to deny Applicant's direct appeal concerning this issue was unreasonable in light of the facts of this case. The 13th Court of Appeals allowed the trial court to mechanistically apply a state's evidence rule in a manner which was arbitrary or disproportionate to the purposes it was designed to serve. The 13th Court of Appeals decision is also contrary to clearly established federal law. See Chambers v. Mississippi, 93 S.Ct. 1038 (1973). Finally, this Constitutional violation was not harmless beyond a reasonable doubt, and that the ruling limiting the defense expert testimony did affect the judgment in a significant way. See Applicant's memorandum of law attached hereto for all purposes. See also the 13th Court of Appeals memorandum opinion attached hereto as well.

9

## GROUND THREE:

INEFFECTIVE ASSISTANCE OF COUNSEL

6TH & 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

## FACTS SUPPORTING GROUND THREE:

Applicant was denied the effective assistance of counsel due to the state prosecutor's obstructive tactics. See (4 R.R.123) & (4 R.R.124-125). In this case, the state prosecutor impeded defense counsel's attempt to conduct a virgorous defense of not guilty by reason of insanity for his client. id. The state prosecutor made two objection's that interfered with defense counsel's representation of his client. id. The trial court sustained both objection's. id. The state prosecutor in this case felt that the Applicant was not worthy of the protracted efforts that his lawyer was making for him, so it made repeated objection's to each and every question, as well as to each and every answer in response to those questions. id. It is not right that the prosecutor should be able to prevent a defense attorney from being able to defend his client against the state's accusations and say, "sure we impeded your defense-now prove it made a difference." It is enought that the prosecutor was able to use the trial court to prevent defense counsel from conducting a virgorous defense. id. The 13th Court of Appeals made clear in it's opinion that the Applicant did not argue on direct appeal, the appropriateness of the state's objection to his question regarding other indications that he could have been insane. See the 13th Court of Appeals memorandum opinion attached hereto [page 8 (footnote)]. It is the Applicant's contention that the prosecutor in this case went so far as to impede his defense counsel's ability to defend him effectively simply because the state prosecutor felt he was guilty of the crime, and that he was not worthy of effective assistance of counsel. No matter how guilty the prosecutor thinks the defendant was, he was in this case, entitled to a better procedure than the one he received.

Rev. 01/14/14

In the present case, the circumstances surrounding defense counsel's

representation of Applicant-the state prosecutor's repeated objection's-
prevented defense counsel from assisting Applicant during a critical

stage of the proceeding. See Cronic, 466 U.S. at 659 (1984). Under
those circumstances, although counsel was available to assist Applicant,

the likelihood that any lawyer, even a fully competent one as Applicant's
was here, could provided effective assistance was so small that a

presumption of prejudice is appropriate without inquiry into the actual
conduct of the trial. Id. at 659-60, 104 S.Ct. at 2047 (1984). See

Applicant's memorandum of law attached hereto for all purposes.

11

54

## GROUND FOUR:

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

6TH & 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

## FACTS SUPPORTING GROUND FOUR:

Applicant will assert that his counsel on direct appeal was ineffective for failing to raise on direct appeal four improper comments on his exercise of his Fifth Amendment right to remain silent: The first comment by Texas Ranger Troy Wilson, the second comment was also by Texas Ranger Troy Wilson, the third by the prosecutor, and the fourth was also by the prosecutor during closing argument. See all of these improper comments (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). The testimony by Texas Ranger Troy Wilson regarding Applicant's post-arrest silence which the prosecutor elicited and the prosecutor's closing argument are impermissible comments on Applicant's post-arrest silence. id. Finally, in his closing argument, the prosecutor himself commented on Applicant's silence, and linked Applicant's desire to remain silent to his insanity defense, arguing that he understood what he was doing. id. While this use of Applicant's silence clearly violated the due process clause of the Fourteenth Amendment, see Doyle v. Ohio, 96 S.Ct. 2240 (1976), such a constitutional violation is subject to the harmless error rule. It is Applicant's contention that his appellate counsel's failure to raise the Fifth Amendment issue causes his performance to fall below that wide range of competence required of attorney's in criminal cases. These improper comments were obvious on the record, and must have leaped out upon even a casual reading of the transcript. There can be no reasonable tactical basis not to have raised this "Dead-Bang-Winner" on direct appeal. The Fifth Amendment issue was significant and would have been apparent to a reasonably competent appellate attorney. Therefore, Applicant contends that his appellate attorney's performance was constitutionally deficient

for not raising such a claim. See Strickland v. Washington, 104 S.Ct. 2052 (1984). Counsel's deficient performance also was prejudicial to Applicant's direct appeal. See Evitts v. Lucey, 105 S.Ct. 830 (1985). There is a reasonable probability of a different outcome had counsel raised the Fifth Amendment issue. A new trial would have been granted due to the constitutional violation. See Applicant's memorandum of law attached hereto for all purposes.

13

**GROUND:** FIVE

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

6TH & 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

**FACTS SUPPORTING GROUND:**

Applicant will assert that his counsel on direct appeal was ineffective for failing to raise prosecutorial misconduct. The record will reflect that Applicant's post-arrest silence was commented on by Texas Ranger Troy Wilson. See (3 R.R.91). That the prosecutor introduced into the state's case in chief, prior to any testimony from Applicant, substantive evidence that Applicant chose to remain silent on the reading of his rights made by Texas Ranger Troy Wilson. id. That from the beginning of it's own case, through the cross examination of the defendant, up until the culmination of it's final argument, the state consistently and repeatedly sought to make impermissible references to Applicant's post-Miranda silence. See (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). That the prosecutor elicited this information knowing that the Applicant did in fact exercise his Fifth Amendment right to remain silent. id. It is the Applicant's contention: since he did not raise this issue on direct appeal as plane error, he will be procedurally barred, and the state will even try to pursue this defense. However, because Applicant's trial counsel, and appellate counsel failed to raise the issue, that decision is sufficiently egregious to constitute constitutionally ineffective assistance of counsel under Strickland v. Washington, 104 S.Ct. 2052 (1984). In this case, Applicant believe that both counsel during trial, and counsel on appeal was, ineffective for faling to raise a well-established, straight-forward, and obvious prosecutorial misconduct claim. id. There were repeated references to the Applicant's post-arrest silence made by the prosecutor. id. The Fifth Amendment to the Constitution Guarantees to every criminal defendant the right to remain silent. As a corollary to this right, the Supreme Court has held that the Fifth Amendment also

14

this right, the Supreme Court has held that the Fifth Amendment also prohibits a prosecutor from commenting on the defendant's post-arrest silence. See Griffin v. California, 85 S.Ct. 1229 (1965). See also Doyle v. Ohio, 426 U.S. 610 (1976). These cases have recognized that a prosecutor may not comment on the defendant's silence. Since Applicant was deprived of his constitutional right to counsel during trial and on appeal, he maintains, he is entitled to be heard on his claim of prosecutorial misconduct. See [Ground Six] of Applicant's petition for writ of habeas corpus. Counsel on appeal should have, at the very outset, have challenged the improper references to the Applicant's post-arrest silence on direct appeal. Moreover, that counsel's omission cannot have been the result of any kind of strategy. Finally, Applicant will request an evidentiary hearing to resolve this disputed issue. See Applicant's memorandum of law attached hereto for all purposes.

15

Rev. 01/14/14

58

**GROUND:** SIX

PROSECUTORIAL MISCONDUCT

14TH AMENDMENT OF THE UNITED STATES CONSTITUTION

**FACTS SUPPORTING GROUND:**

Applicant will assert that he was denied a fair trial because the state prosecutor's egregious acts of misconduct. See (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). In this case, Applicant was not afforded a fair trial on account of the state prosecutor's repeated references to Applicant's post-arrest silence. id. The prosecutor first erred when he introduced into the state's case in chief, prior to any testimony from the defendant substantive evidence that the defendant chose to remain silent on the reading of his right to remain silent given to him by Texas Ranger Troy Wilson. id. From the beginning of it's own case, through the cross examination of the defendant, up until the culmination of it's final argument, the state consistently and repeatedly sought to make impermissible references to Applicant's silence after his arrest. id. It is fundamentally unfair, except in special circumstances to cross-examine a defendant about post-arrest post-Miranda silence. There can be no special circumstances in this case that would permit the prosecutor to cross-examine the defendant about his post-arrest silence. id. This Constitutional right that was violated by the prosecutor was not harmless beyond a reasonable doubt. The prosecutor linked Applicant's desire to remain silent to his not guilty by reason of insanity defense, arguing that he understood what he was doing. id. This clearly violated the due process clause of the 14th Amendment. See Doyle v. Ohio, 96 S.Ct. 2240 (1976). It is tha Applicant contention that he was denied a fair trial, and maintains, that he should be afforded a new trial based on on this Constitutional violation. Finally, Applicant will request an evidentiary hearing to resolve this disputed claim of prosecutoral misconduct.

14 A

Rev. 01/14/14

59

See Applicant's memorandum of law attached hereto for all purposes.

**15** A

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

**OATH BEFORE A NOTARY PUBLIC**

STATE OF TEXAS

COUNTY OF _DeWitt_

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application arc true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20_____.

_____
Signature of Notary Public

16

Rev. 01/14/14

**61**

## PETITIONER'S INFORMATION

Petitioner's printed name: ___Kirk Ross Engle___

State bar number, if applicable: _____

Address: ___Hughes Unit_____

_____Rt.2 Box 4400_____

_____Gatesville,TX.76597_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, ___Kirk Ross Engle_____, am the (applicant)/ petitioner (circle one) and

being presently incarcerated in ___Hughes Unit_____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on ___September 18_____, 20 __17__.

___Kirk R. Engle_____
Signature of (Applicant)/ Petitioner (circle one)

17

**PETITIONER'S INFORMATION**

Petitioner's printed name: Kirk Ross Engle

Address: Hughes Unit

Rt.2 Box 4400

Gatesville,TX.76597

Telephone: 

Fax: 

Signed on September 18 , 20 17 .


Kirk R. Engle

Signature of Petitioner

18



# NUMBER 13-16-00270-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**KIRK ROSS ENGLE,**                                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                          **Appellee.**

---

**On appeal from the 24th District Court
of DeWitt County, Texas.**

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras,[1] and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Kirk Ross Engle appeals from his conviction for aggravated assault with

a deadly weapon, a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(a)(2) (West,

Westlaw through 2015 R.S.), with a finding of habitual offender status. *See id.* § 12.42

---

[1] Justice Dori Contreras, formerly Dori Contreras Garza.  *See* TEX. FAM. CODE ANN. § 45.101 *et seq* (West, Westlaw through 2015 R.S.).



FILED
at 11.12 day of ____ o'clock P. M
COPY JAN 1 9 2017
ELIZABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By _____ Deputy

**64**

(West, Westlaw through 2015 R.S.). By one issue, Engle contends that the trial court erred when it limited his expert's testimony. We affirm.

## I. BACKGROUND

Engle was charged with aggravated assault with a deadly weapon, with enhancement paragraphs alleging habitual offender status. Throughout his jury trial, Engle did not dispute his role in the aggravated assault with a deadly weapon. He based his trial strategy on the affirmative defense of involuntary intoxication.[2]

Although the jury charge included a definition of involuntary intoxication and an option of finding Engle not guilty by reason of insanity, the jury found Engle guilty of aggravated assault with a deadly weapon. The trial court conducted the punishment hearing and found all three enhancement paragraphs to be true. The court assessed Engle's punishment at forty years in the Institutional Division of the Texas Department of Criminal Justice. Engle appeals from this judgment.

## II. LIMITATION OF DEFENSE EXPERT'S TESTIMONY

In his sole issue, Engle generally complains that the trial court abused its discretion when it limited the testimony of his expert, Thomas Demoor, M.D., by not allowing him to testify fully and completely about an element of the involuntary intoxication defense—specifically whether Engle knew that his conduct was wrong. Engle contends that by limiting Dr. Demoor's testimony, the trial court stopped him from proving his affirmative defense. He claims that his constitutional right to due process was violated because Dr. Demoor's testimony was "critical to the heart of [his] trial defense."

---

[2] It is undisputed that Engle notified the State of his intent to raise an insanity defense.

2

A. **Standard of Review**

We review a trial court's evidentiary rulings to admit or exclude evidence for an abuse of discretion. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *See State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). This Court examines the trial court's decision in light of what was before the trial court at the time the decision was made. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We will uphold that decision if it is reasonably supported by the record and correct under any theory of law applicable to the case. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

B. **Applicable Law**

Section 8.01 of the Texas Penal Code, which encompasses the defense of insanity due to involuntary intoxication, provides that "it is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West, Westlaw through R.S. 2015); *Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2002). The elements needed to establish an involuntary intoxication affirmative defense include: (1) the accused exercised no independent judgment or volition in taking the intoxicant; and (2) as a result of a severe mental disease or defect caused by the involuntary intoxicant, the accused did not know that his conduct was wrong. *Mendenhall*, 77 S.W.3d at 818; *see Farmer v. State*, 411 S.W.3d 901, 911–12 (Tex. Crim. App. 2013) (Cochran, J., concurring); *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim.

3

App. 1979); *see also* TEX. PENAL CODE ANN. § 8.01(a). "Involuntary intoxication by prescription medicine occurs only when the person has no knowledge that the medicine has possibly intoxicating side effects." *Woodman v. State*, 491 S.W.3d 424, 429 (Tex. App.—Houston [14 Dist.], 2016, pet. ref'd) (citing *Mendenhall v. State*, 15 S.W.3d 560, 565–66 (Tex. App.—Waco 2000), *aff'd*, 77 S.W.3d 815 (Tex. Crim. App. 2002)); *Nelson v. State*, 140 S.W.3d 206, 210 (Tex. App.—Fort Worth 2004, no pet.).

## C.   Analysis

### 1.   The Trial Court Properly Sustained the State's State-of-Mind Objection

Engle first contends that the trial court abused its discretion when it did not allow Dr. Demoor to opine that Engle "was not able to appreciate right from wrong because of involuntary intoxication." On direct examination, Dr. Demoor provided the following testimony relevant to the State's objection that Dr. Demoor disqualified himself from testifying regarding Engle's state of mind:

> Q.   Can you tell this jury what procedures you go through in examining someone to determine their legal sanity at the time they committed a crime.
>
> A.   Well, legal sanity is a very narrowly defined topic and what some people are used to hearing is called not guilty by reason of insanity, that might be more familiar to what you've heard.   And for somebody to be not guilty by reason of insanity they have to have such severe mental illness that they can no longer tell right from wrong.   And it's very few people that are so severely mentally ill that they can't tell right from wrong.   To evaluate for that you're trying to assess what actions they did and whether a mental illness caused them to not realize that the actions they did were wrong.
>
> Q.   Did you conduct such an examination on Mr. Engle?
>
> A.   You know, technically I did not because we were not looking at

4

67

criminal insanity. I didn't see any evidence to support not guilty by reason of insanity. I wasn't looking for that. I was looking for what we thought of as involuntary intoxication.

. . . .

Q.  Okay. You had mentioned that you didn't know the straight insanity but then you started to mention involuntary intoxication.

A.  Well, that was the question that I was evaluating, yes.

Q.  And I think when you reported was insanity, too, for voluntary intoxication?

THE REPORTER: I'm sorry. Would you start again.

Q.  Was it your understanding through to involuntary intoxication?

A.  I didn't use the term insanity, I did believe he suffered from involuntary intoxication due to his medication and that led to a manic state that caused his aggressive outburst.

Q.  And did it lead to a state where he didn't know what he was doing was wrong?

[THE STATE]: I object, Your Honor. The witness has already testified he did not evaluate for that.

THE COURT: Sustained.

A.  Can I revise? I mean . . . I looked at the records, I talked to the individual. I didn't know—I didn't notice that he didn't know it was wrong or whether it was wrong or right, I didn't—I didn't ask that question. He had amnesia for the event so I couldn't really ask what his state of mind was at the time of the event.

. . . .

THE COURT: We're going to break for lunch. I'm going to ask that you be back in the jury room, ready to proceed, at 1:25. We'll be in recess until then.

(Jury recessed.)

5

68

THE COURT:       My understanding . . . is this is a two-prong test. One is was he involuntarily intoxicated and as a result of that involuntary intoxication did he lose an awareness of right and wrong, so this doctor has testified that he didn't evaluate him for losing an awareness of right and wrong.  So he can talk about involuntary intoxication but he has very eloquently and honestly said I didn't evaluate him for whether he knew what he was doing was right or wrong.  So I can't—we can't go off into that.  I want to make sure you understand that.  He can no longer testify about whether or not Mr. Engle knew what he was doing and knew whether it was right or wrong.       He can talk about whether he was involuntarily intoxicated. . . .  But that's where I think we are in the evidence at this point, so I just want to make sure that everybody understood where I think we are and that my rulings are going to be based on that understanding of what the doctor has told me, that he didn't evaluate him for whether or not he was aware of the right or wrong nature of his actions.

. . . .

(Open court, defendant and jury present.)

THE COURT:       You may be seated. . . .

Q.    Doctor, do you remember when we left off you had mentioned involuntary intoxication; is that correct?

A.    Yes.

Q.    What exactly is involuntary intoxication?

A.    In this context involuntary means that he didn't have a choice to refuse to take a substance.  Intoxication means that a substance altered his emotional and mental well-being.

Q.    And did you see evidence of that in this situation with Mr. Engle?

A.    Yes.

Q.    Now, back to—you said that you didn't see any evidence of insanity in this case, correct?

A.    Well, that I didn't evaluate him specifically.

6

69

Q. Okay. And why was that?

A. Because he told me he didn't remember the event and I couldn't evaluate his state of mind at the time of the event.

Q. So because he had amnesiatic [sic] about it . . . .

A. He testified—he said he had blackouts, which we use the term amnesia.

Q. So you reviewed other things in relation to this case, though?

A. Yes.

Q. What all did you review? Offense reports?

A. I reviewed his medical records from the MHMR in Victoria. I reviewed the witness statements from the assault, I guess offense reports. I did review [the State's expert's] reports. There might be a few other things.

. . . .

[DEFENSE]: Pass the witness.

Examining the trial court's decision in light of what was before the trial court at the time the decision was made, *see Weatherred*, 15 S.W.3d at 542, we cannot conclude that the trial court's decision to sustain the State's objection regarding state-of-mind testimony was arbitrary, unreasonable, or without reference to guiding rules or principles. *See Mechler*, 153 S.W.3d at 439. Clearly, Dr. Demoor testified that he did not evaluate Engle's state of mind at the time of the event. Dr. Demoor explained that he could not testify regarding Engle's state of mind because Engle told him that he "didn't remember the event." It is apparent that the trial court understood that this testimony related to insanity due to a mental disease or defect or to insanity due to the involuntary intoxicant that caused the severe mental disease or defect. *See Mendenhall*, 77 S.W.3d at 818;

7

70

*see also* TEX. PENAL CODE ANN. § 8.01(a). Based on Dr. Demoor's explicit testimony, the trial court sustained the State's objection that this expert had already testified he did not evaluate Engle for whether he knew that his conduct was wrong. *See Mendenhall*, 77 S.W.3d at 818. The trial court's decision to exclude any state-of-mind testimony from Dr. Demoor is reasonably supported by the record, especially in light of the expert's unequivocal testimony that Kyle "didn't remember the event" so he "couldn't evaluate his state of mind," and the trial court's reasoning as expressed to counsel outside the presence of the jury. *See Willover*, 70 S.W.3d at 845. The decision is correct based on a theory of law related to the admissibility of evidence. *See id.* We conclude that the trial court did not abuse its discretion in excluding Dr. Demoor's opinion testimony regarding Engle's state of mind. *See Shuffield*, 189 S.W.3d at 793.[3]

### 2. The Trial Court Did Not Rule on the State's Relevancy Objection

Engle also asserts that the trial court erred in sustaining the State's relevancy objection to the following testimony provided by Dr. Demoor during his direct examination:

Q. Are you familiar with Lexapro?

A. Yes.

Q. What is Lexapro prescribed for?

A. It's prescribed for depression and anxiety.

Q. Was this a proper case to prescribe Lexapro for?

---

[3] The State also objected to the following question Engle asked of Dr. Demoor: "And you said you didn't see any evidence of insanity because you couldn't talk to him directly about it. Were there other indications, though, that there's a possibility or probability that he could have been insane at the time of the alleged offense?" The trial court sustained the State's objection that Dr. Demoor had "already testified he did not evaluate for that." On appeal, Engle does not argue the appropriateness of the State's objection to his question regarding "other indications . . . that he could have been insane" and does not challenge the trial court's ruling on this objection. So we do not address it. *See* TEX. R. APP. P. 47.1.

8

A.    It's a debatable question.   Lexapro is not approved for use in bipolar depression and in my opinion Mr. Engle suffers from bipolar disorder, as was the opinion of the doctor at MHMR, Dr. Dotter. Antidepressants are used at times in bipolar depression but they have to be [used] very cautiously, with very clear instructions to monitor for increasing agitation or irritability or aggression and to notify the doctor or to stop the medicine if that happens.   That's my experience of using that type of medicine for bipolar depression.

Q.    And so in using it for bipolar depression, in reviewing the—what all did you review in looking at . . . .

[THE STATE]:      Your Honor, I'm going to object.  I don't think it's relevant.   The only relevance of this witness's testimony has to do with the analysis for the issue of insanity, not for bipolar depression.

Although Engle contends that the trial court sustained the State's relevancy objection, we find nowhere in the record where the court expressly or impliedly adversely ruled on this objection.   See TEX. R. APP. P. 33.1; see also TEX. R. EVID. 401.   After the State objected, the trial court excused the jury and addressed the State's challenge to Dr. Demoor state-of-mind testimony.   Defense counsel simply chose not to continue questioning Dr. Demoor about the prescription medicine.   So Engle has no basis for his complaint that "he was stopped from proving how Lexapro affects sufferers of bipolar disorder."   See TEX. R. APP. P. 33.1(a).

**3.    Determination**

Having concluded that the trial court properly sustained the State's state-of-mind objection and that Engle has no basis for a complaint about the State's relevancy objection, we overrule Engle's sole appellate issue.

9

### III. CONCLUSION

We affirm.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of January, 2017.

10

**73**

Case. 15-11-12, 329

IN THE 24TH JUDICIAL DISTRICT COURT
OF DEWITT COUNTY, TEXAS

EX PARTE KIRK ROSS ENGLE

### APPLICANT'S MOTION REQUESTING THAT PORTIONS OF THE RECORD THAT'S BEING REFERENCE IN HIS WRIT APPLICANT BE ATTACHED HERETO FOR ALL PURPOSES

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Applicant, who files this his motion requesting that portions of the record that's reference in his writ application be attached hereto for all purposes, and will show the Court as follows:

· Applicant was granted a court appointed attorney on direct appeal in this case due to being indigent.

· Applicant is to poor to provide the record in this case, and request that the State provide the record due to his poor status.

· Finally, this motion is made in good faith, and not for any purposes to delay these proceedings.

WHEREFORE, PREMISES CONSIDERED, Applicant respectfully prays that this Court Grant this motion, and provide the record, or in the alternative order that the State provide the record in this case. Justice demands nothing less.

### CERTIFICATE OF SERVICE

This is to certify that on September 18,2017 , a true correct copy of this motion was forwarded to: DeWitt County District Clerk 307 N. Gonzales St. Cuero,TX.77954 .

FILED
___ day of ___
at 10:30 o'clock A.M
SEP 18 2017
TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By _____ Deputy 1 of 1

Kirk Ross Engle
Hughes Unit
Rt.2 Box 4400
Gatesville,TX.
76597 [U.S.A]

Kirk R. Engle

74

Case No. 15-11-12,329

IN THE 24TH JUDICIAL DISTRICT COURT

OF DEWITT COUNTY, TEXAS

EX PARTE KIRK ROSS ENGLE

## MEMORANDUM BRIEF IN SUPPORT OF WRIT FOR HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Article 11.07 of the Texas Code of Criminal Procedure, the Applicant files this his memorandum brief in support of writ for habeas corpus and will show this Court as follows:

## CONCERNING THE NEED FOR AN EVIDENTIARY HEARING

There are controverted, previously unresolved facts material to the legality of Applicant's confinement which would necessitate a hearing. Applicant has alleged facts which, if true, entitle him to relief. See Ex parte Maldonado, 688 S.W.2d 114, 116 (Tex.Crim.App.1985). It is therefore requested that an evidentiary hearing be held in response to Applicant's application for writ of habeas corpus.

### GROUND 1.
### INEFFECTIVE ASSISTANCE OF COUNSEL

THE LAW

A criminal defendant has a constitutional right to effective assistance of counsel at trial. See Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.Crim.App.-1986). Claims of ineffective assistance are analyzed under the standards set forth in Strickland v. Washington, 466 U.S. 687, 694 (1984). See Hernandez, 726 S.W.2d at 55; Williams v. State, 946 S.W.2d 886, 904 (Tex.App.-Waco 1997, no pet.). An applicant claiming ineffective assistance must show (1) counsel's representation fell below an objective standard of reasonableness, and (2)

FILED

at ___10:30___ o'clock ___a___ M

SEP 18 2017

TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By _____ Deputy

1.

**75**

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland 466 U.S. at 687; see also Hernandez, 726 S.W.2d at 55. To prevail on a claim of ineffective assistance, the applicant must overcome the strong presumption that counsel provided competent representation. See Ex parte McFarland, 163 S.W.3d 743 (Tex.Crim.App.2005).

## ARGUMENT

Applicant's trial counsel failed to object to the prosecutor's egregious acts of misconduct during trial. See (3 R.R.91),(4 R.R.86-88), & (5 R.R.29). During trial, a Texas Ranger named Troy Wilson testified. Id. This witness commented on the Applicant's post-arrest silence in violation of the Applicant's right to remain silent. The defendant in every criminal trial has the constitutional right to remain silent. See United States Constitution Amendment 5; Texas Constitution Article 1, § 10. It is also provided by statute. Tex.Crim.Proc.Code Art. 38.08. Use of post-arrest, post-Miranda silence is unacceptable. See Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)(Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings). This is one of the most sacrosanct of constitutional rights. The violation of the right was clear and deliberate. Id. The prosecutor made repeated references to Applicant's post-arrest silence. Id. Pursuant to Griffin v. California, 380 U.S. 609: A prosecutor is prohibited from commenting on the accussed's post-arrest silence. Id. at 615. The failure to object and site the right to remain silent in this case allowed, and in fact, invited the jury to equate the Applicant's silence with guilt. There was no reasonable tactical basis for failing to make a constitutional objection. In not making this constitutional objection, counsel was not functioning as "counsel" as

2

guaranteed by the Sixth Amendment; Strickland, 466 U.S. at 687 S.Ct. 2054, and Applicant can establish prejudice also. During trial, the prosecutor stated several times that the Applicant choose to remain silent after Texas Ranger Wilson read him his right's. id. That he got up and walked out on him. id. Clearly the jury's unfettered receipt of this argument worked to Applicant's actual and substantial disadvantage. As the argument was made to rebut the Applicant's sole defense of insanity. id. Given the lack of a sufficient objection, the trial court issued no cautionary instruction leaving the jury free to consider this highly improper factor in determing guilt and fixing sentencing. See United States v. Wadlington, 233 F.3d 1067, 1080 (8th Cir.-2000)(defendant not prejudice by prosecutorial misconduct during trial where district court gave appropriate cautionary instructions). Had counsel objected and prompted a curative instruction from the trial court, the court could have given an appropriate cautionary instruction to the jury. Failing to lodge this objection thus prejudiced Applicant and infected his entire trial with constitutional error. See Darden v. Wainwright, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The trial record in Applicant's case "is abundantly clear that trial counsel failed to make a constitutional argument predicate on the prosecutor's invitation to the jury that it consider Applicant's post-arrest silence in rebuttal to his sole defense." id. No sound trial strategy could include failing to make a constitutional objection to a prosecutor's improper comment concerning Applicant's post-arrest silence. id. Thus, the prosecutor's argument, and comment here "was constitutionally defective such that any reasonable counsel would have objected under the circumstances." id. See Combs v. Coyle, 205 F.3d 269 (6th Cir.2000). Had counsel made the proper objection during trial, there is a reasonable probability that the outcome of the proceeding would have been different. On the contrary, a motion for a mistrial would have been appropriate and should

3

77

have been made. id. The failure to object to these improper and prejudicial statements constitutes ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. at 687 (1984).

## CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, vacate the sentence, and or hold an evidentiary hearing, and after said hearing, order the State to retry the Applicant. Justice demands nothing less.

## GROUND 2.

### APPLICANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FUNDAMENTALLY FAIR TRIAL AS GUARANTEED BY THE DUE PROCEES CLAUSE OF THE FOURTEENTH AMENDMENT

### THE LAW

The right of an accused in a criminal trial to due procees is, in essence, the right to a fair opportunity to defend against the State's accusations. The right to confront and cross-examine witnesses and to call witnesses on one's own behalf have long been recognized as essential to due process. See Chambers v. Mississippi, 93 S.Ct. 1038 (1973).

An accused does not have an unfettered right to present any evidence he or she wishes. See Taylor v. Illinois, 108 S.Ct. 645 (1988). However, as Chambers teaches, depending on the facts and circumstances of the case, at times a state's rule of evidence cannot be mechanistically applied and must yield in favor of due process and the right to a fair trial; 410 U.S. at 302, 93 S.Ct. 1038 (1973).

Due process includes a right to a meaningful opportunity to present a complete defense. See Crane v. Kentucky, 106 S.Ct. 2141 (1984). That constitutional right is violated by the exclusion of probative admissible evidence.[*]

---

[*] The right to offer the testimony of witnesses, and to compel their attendance, if neccessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. See Washington v. State of Texas, 87 S.Ct. 1920 (1967).

ARGUMENT

Applicant was deprived of the opportunity to present a complete defense when the trial court limited his expert witness testimony. See (4 R.R.126). In this case, Applicant clearly asserted the defense of insanity pursuant to Texas Penal Code § 8.01 and tried to prove it by asserting involuntary intoxication. His pre-trial filings clearly asserted and notified the State that he would assert an insanity defense at trial. See (1 C.R.52-53). The State clearly knew this as well as the State sought an examination of the Applicant prior to trial. See (1 C.R.55-56). In fact, the State presented her own psychiarist, Joel Kutnik, M.D. to testify on her behalf concerning the Applicant during trial. See (4 R.R.128). Applicant's trial counsel also argued and pursued the defense of insanity and involuntary intoxication during his trial by calling witnesses including, but not limited to Dr. Demoor. As Applicant's trial counsel did not contest the State's witnesses as to the incident in August of 2014 for which Applicant was charged, it is clear that his trial strategy was to present an insanity defense by way of involuntary intoxication. The trial court's ruling was erroneous and in fact contrary to clearly established federal law. See Crane v. Kentucky, 106 S.Ct. 2142 (1984). See also Chambers v. Mississippi, 93 S.Ct. 1038 (1973). It is clear that the trial court limited Dr. Demoor's testimony. However, the trial court did not act with respect to any guiding rule or principle in limiting and essentially keeping Applicant's expert from testifying fully and completely as to both prongs of the involuntary intoxication defense. In fact, the trial judge failed to focus on the probative value of the Applicant's expert testimony, and did not access the potential adverse effect of limiting the defense expert testimony in this case. The trial court confused the two different concepts of insanity and involuntary intoxication in making its ruling outside the presence of the jury. Involuntary intoxication is encompassed by the insanity

defense found in Texas Penal Code § 8.01 and is an affirmative defense. See Mendenhall v. State, 77 S.W.3d 815, 817-18 (Tex.Crim.App.2002). While involuntary intoxication is encompassed by Texas Penal Code § 8.01, it is still a separate and independent way to meet the requirements of § 8.01. Clearly both, the trial court, and the 13th Court of Appeals decision was unreasonable, and also contrary to established federal law. The evidence in which the defense attempted to put on was material to the Applicant's sole defense of insanity. Thus, the holding of both Court's to reject this theory was thus erroneous. The 13th Court of Appeals allowed the trial court to apply a rule that would deprive the Applicant of putting on a complete defense regardless of the effect's it would have on the Applicant's right's.

## CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, vacate the sentence, and or set this matter down for an evidentiary hearing, and after said hearing, order the State to retry the Applicant. Justice demand nothing less.

GROUND 3.

### INEFFECTIVE ASSISTANCE OF COUNSEL

## THE LAW

In Bell v. Cone., 122 S.Ct. 1843 (1984), the Supreme Court defined the differences between claims governed by Strickland and claims governed by Cronic. If a claim is governed by Cronic, however, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. Three types of case warrant Cronic's presumption-of-prejudice analysis. The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at a critical state." Bell, 122 S.Ct. at 1851. The second is when counsel "entirely fails to subject the prosecution's case to meaningful

6

adversarial testing." Id. The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance. Id.

## ARGUMENT

When the state, here in the person of the trial judge, interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense, Strickland v. Washington, supra, 104 S.Ct. at 1064 (1984) we are in a different ballpark. If the state is not a passive spectator of an inept defense, but a cause of the inept defense, the burden of showing prejudice is lifted. It is not right that the state should be able to say, sure we impeded your defense now prove it made a difference. It is enough that in this case, the prosecutor's obstructive tactics, and it's repeated objection's appreciably reduced the likelihood that Applicant's trial counsel would conduct a vigorous defense. See (4 R.R.123) & (4 R.R.124-125). Compare United States v. Cronic, 104 S.Ct. 2039 (1984); Geders v. United States, 96 S.Ct. 1330 (1976); Herring v. New York, 95 S.Ct. 2550 (1975); Siverson v. O'Leary, 764 F.2d 1208, 1217 (7th Cir.1985). This notion of impedance may, of course, lie behind the refusal to disregard harmless error when the defendant is forced against his will to be jointly represented with other defendants. But whether or not this case fits the precise mold of the Holloway case it involves the same policy, one of protecting defendants against gratuitous interference by the judge, and or prosecutor with their efforts to defend themselves. Applicant has asserted that he was denied the assistance of counsel due to the state's repeated inappropriate objection's. See the record (4 R.R.123) & (4 R.R.124-125). In this case, the prosecutor went so far as to imped defense counsel's ability to cross-examine Applicant's expert witness. The state felt that Applicant was not worthy of the effective assistance of

7

counsel, simply because it felt he was guilty of the crime. Hypothetically, if the police, after arresting Applicant and obtaining an eye-witness identification of him plus his confession, had taken him directly to the penitentiary on the ground that a trial would be a waste of time for someone so patently guilty, he would be entitled to release on habeas corpus; He would have been deprived of his liberty without due process of law. The Constitution requires (unless the defendant waives his rights) a certain modicum of adversary procedure even if the outcome is a foregone conclusion because the evidence of guilt is overwhelming. Although the present case is much less extreme than the hypothetical case just put, Applicant nevertheless was so far impede in his ability to defend himself effectively that he should be entitled to a new trial, or to be released if the state of Texas and its authorities don't want to retry him. Applicant do not contend that he was denied due process, however, he thinks that the state deprived him of his Constitutional right to the assistance of counsel. No matter how guilty the prosecutor thinks the defendant is, he was in this case, entitled to a better procedure that the one he received. In the present case, the circumstances surrounding defense counsel's representation of Applicant-the prosecutor's repeated objection's-prevented defense counsel from assisting Applicant during a critical stage of the proceeding. See Cronic, 466 U.S. at 659 (1984). Under those circumstances, although counsel was available to assist Applicant, the likelihood that any lawyer, even a fully competent one as Applicant's was here could have proveded effective assistance was so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. Id. at 659-60, 104 S.Ct. at 2047 (1984).

CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, and vacate the sentence. Justice demands nothing less.

82

GROUND 4.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

### THE LAW

A first appeal as of right is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney. This is hardly novel. See Evitts v. Lucey, 105 S.Ct. 830 (1985). In short, the promise of Douglas that a criminal defendant has a right to counsel on appeal-like the promise of Gideon that a criminal defendant has a right to counsel at trial-would be a futile gesture unless it comprehended the right to the effective assistance of counsel. Id. The right to appellant counsel is now firmly established. See Evitts v. Lucey, 469 U.S. 392 (1985).

### ARGUMENT

Applicant asserts that his counsel on his direct appeal was ineffective for failing to raise on appeal four improper comments on Applicant's exercise of his Fifth Amendment right to remain silent: The first comment by Texas Ranger Troy Wilson, the second also by Ranger Wilson, the third by the prosecutor, and the fourth also by the prosecutor during closing argument. See (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). The testimony by Ranger Wilson regarding Applicant's post-arrest silence which the prosecutor elicited and the prosecutor's closing argument are all impermissible comments on the Applicant's post-arrest silence. id. In Griffin v. California, 85 S.Ct. 1229 (1965), the Supreme Court held that direct comments by the prosecution on a defendant's silence in a state criminal proceeding violate the Fifth Amendment. Id. The definition of such an impermissible comment turns on whether the remark is "manifestly intended" by the prosecutor or "would naturally" and necessarily be understood by the jury as a comment on the defendant's silence. See United States v. Forrest, 620 F.2d 446, 455-56 (5th Cir.1980). Here, all of the standards of an impermissible comment are

9

met. The comments were direct and would naturally be understood by a jury as comments on silence. id. When viewed in the context of the overall proceedings, these comments show a manifest intent on the part of the prosecutor to highlight the defendant's silence and to utilize it to defeat Applicant's insanity defense. id. There were repeated questions. id. The prosecutor was not just seeking to verify that Applicant was advised of his rights, when Ranger Wilson simply told the jury that Applicant chose to remain silent after reading him his right's. id. Rather after ascertaining that the Miranda advice was given, the prosecutor on four separate occasions expressly asked Ranger Wilson whether Applicant had made a statement after being read his rights, had Applicant done anything else after being read his right's. id. Afterwards, the prosecutor repeated the same procedure with Applicant when he took the stand. id. Finally, in his closing argument, the prosecutor himself commented on Applicant's desire to remain silent, and linked Applicant's silence to his insanity defense, arguing that he understood what he was doing. id. In this regard, the prosecutor's comments are indistinguishable from that condemned in Wainwright v. Greenfield, 106 S.Ct. 634 (1986). While this use of Applicant's silence clearly violated the due process clause of the 14th Amendment, see Doyle v. Ohio, 96 S.Ct. 2240 (1976), such a constitutional violation is subject to the harmless error rule. See United States v. Meneses-Davila, 580 F.2d 888 (5th Cir.1978)(citing Chapman v. United States, 547 F.2d 1240, 1249-50 (5th Cir,), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). In Meneses-Davila, the 5th Circuit identified three categories into which prosecutorial comment on a defendant's silence may fall. Id. However, Meneses-Davila recognized that comments on post-arrest silence do not always fit neatly into these categories and that determinations of harmlessness must be made on a "case-by-case basis," Id. at 890. The procedure for making such a

determination should include: an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the defendant's guilt. Id. In Meneses-Davila, the Fifth Circuit emphasized the fact that there was more than a single reference to the defendant's silence. Id. at 895. Further, the court found that while the evidence of defendant's guilt was strong, it was not overwhelming, nor was defendant's exculpatory story transparently frivolous. Id. Applicant's situation closely resembles that of Meneses-Davila. At three different times during Applicant's trial, references were made to the fact that Applicant terminated the interview with Texas Ranger Troy Wilson, thereby wishing to remain silent, and invoking the Fifth Amendment against self incrimination, including the prosecutor's closing argument linking Applicant's silence to the insanity issue.* Significantly, insanity was the thrust of Applicant's defense, and the evidence of Applicant's sanity at the time of the incident was far from overwhelming. Finally, it is undisputed that Applicant was pursuing an insanity defense. the improper comments on Applicant's silence cannot be deemed harmless beyond a reasonable doubt. See Greenfield v. Wainwright, 741 F.2d 329, 336 (11th Cir.1984)(holding that prosecutor's comment on silence as evidence of sanity was not harmless), aff'd on other grounds, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). Applicant maintains that counsel on appeal was constitutionally ineffective since he failed to raise this issue on direct appeal as plane error. It cannot be said in this case, that the adversarial testing process worked in Applicant's direct appeal; Strickland, 104 S.Ct. at 2066 (1984). Counsel's deficient performance worked to Applicant's actual prejudice. Had counsel raised the issue on appeal, there is a reasonable probability that the outcome of the appeal would have been different. This issue was not harmless, in fact, it was used to defeat the Applicant's sole defense of insanity. See Lockhart v. McCotter, 782, F.2d 1275.

---

* The Black's Law Dictionary define the word 'Terminate": To put an end; To bring to an end. To put an end; To bring to an end. To end; To conclude.

CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, and vacate the sentence. Justice demands nothing less.

## GROUND 5.
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

THE LAW

See ground four in the memorandum of law.

ARGUMENT

See ground five in the writ application.

CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, and vacate the sentence. Justice demands nothing less.

## GROUND 6.
### PROSECUTORIAL MISCONDUCT

THE LAW

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.* As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor- indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one (Quoting Berger v. United States, 55 S.Ct. 629 (1935)). See also Donnelly v. DeChristoforo, 416 U.S. 637.

*The District Attorney Represent's DeWitt County, therefore, they are also in the same position as a United States Attorney. That guilt shall not escape or innocence suffer.

12

86

ARGUMENT

   Applicant contends that during the course of his trial which occurred in

DeWitt County, the prosecutor made improper references to his post-Miranda

silence in violation of his constitutional right to remain silent. See Doyle v

Ohio, 96 S.Ct. 2240 (1976). Applicant asserts that he was denied a fair trial

due to the prosecutor's egregious acts of misconduct. In Doyle v. Ohio, 426

U.S. 610 (1976), the Supreme Court held that it was a violation of the due

process clause of the Fourteenth Amendment for the prosecution to use a

defendant's post-arrest silence to impeach exculpatory testimony given by him

at trial. This rule rested on the presumption that it was fundamentally unfair

to assure a suspect that his silence would not be used against him and then

to use his silence to impeach an explanation subsequently offered at trial.

See also Wainwright v. Greenfield, 106 S.Ct. 634 (1986). However, Doyle does

not apply to cross-examination that merely inquires into prior inconsistent

statements. Such questioning makes no unfair use of silence, because a

defendant who voluntarily speaks after receiving Miranda warnings has not

been induced to remain silent at all. See Anderson v. Charles, 100 S.Ct. 2180

(1980)(per curiam)(concluding no Doyle error, where the prosecutor questioned

petitioner about the difference between his trial testimony and prior

inconsistent statements he had made after arrest). In this case, Applicant

did not make a prior inconsistent statement, whether it was during trial, or

after his arrest. He chose to remain silent after Ranger Wilson read him his

right's. However, the prosecutor's cross-examination of it's witness, his

cross-examination of the defendant, and his closing argument went far beyond

calling the jury's attention to Applicant being advised of his right to remain

silent. See (3 R.R.91)(4 R.R.86-88) & (5 R.R.29). Instead, the prosecutor,

time and time again, made references to the fact that Applicant had terminated

the interview with Ranger Wilson after he was advised of his Miranda right's. id.

13

**87**

The prosecutor's clear intent was to persuade the jury to equate the defendant's silence with guilt. The prosecutor told the jury that had he been insane, how would he have known to exercise his right's. id. The prosecutor told the jury that Applicant terminated the interview with Ranger Wilson. id. The prosecutor first erred when he introduced into the state's case in chief, prior to any testimony from the defendant substantive evidence that the defendant chose to remain silent on the reading of his Miranda right's given to him by ranger Wilson. id. From the begining of it's own case, through the cross-examination of the defendant, up until the culmination of it's final argument, the prosecutor consistently and repeatedly sought to make impermissible references to Applicant's silence after his arrest. See United States v. Williams, 665 F.2d 107, 110 (6th Cir.1981)(concluding that "it is fundamentally unfair, except in special circumstances to cross-examine a defendant about post-Miranda silence"). The goal of Doyle is to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after his or her arrest. See also Smith v. Cadagin, 902 F.2d 553, 557 at n.4 (7th Cir.), cert, denied, 498 U.S. 865 (1990)(Doyle is intended to prohibit a prosecutor from exploiting a defendant's post-arrest silence). An accused has a constitutionally protected right to remain silent at those times and such silence is not evidence of guilt. The burden always remain on the state to prove guilt beyond a reasonable doubt. In this case, the prosecutor linked Applicant's silence to his insainty defense, arguing that he understood what he was doing. id. In short, Applicant's silence was used as evidence to defeat his sole defense of not guilt by reason of insanity. id. However, by repeatedly driving home references to Applicant's silence, and implying that Applicant understood what he was doing, the prosecutor crossed the line. id. As Supreme Court Justice Sutherland stated in the often cited case of Berger v. United States, 55 S.Ct. 629 (1935)."The United States Attorney is the

14

**88**

representative not of an ordinary party to a controversy, but of a
sovereignty whose obligation to govern impartially is as compelling as its
obligation to govern at all; and whose interest, therefore, in a criminal
prosecution is not that it shall win a case, but that justice shall be done.
As such, he is in a peculiar and very definite sense the servant of the law,
the two fold aim of which is that guilt shall not escape or innocence suffer.
He may prosecute with earnestness and vigor-indeed, he should do so. But,
while he may strike hard blows, he is not at liberty to strike foul ones. It
is as much his duty to refrain from improper methods calculated to produce a
wrongful conviction as it is to use every legitimate means to bring about a
just one." See also Donnelly v. DeChristoforo, 416 U.S. 637. The prosecutor's
conduct in this case was a "foul" blow that amounted to blantant and
egregious Doyle error. It is Applicant's contention that he has established
Doyle error, and because so, he thinks he is entitled to a new trial. See
Brecht v. Abrahamson, 113 S.Ct. 1710 (1993). In Brecht, the Supreme Court
found that to obtain habeas corpus relief, a petitioner alleging Doyle error
must establish that the error had a "substantial and injurious effect or
influence in determing the jury's verdict". Id. In particular, the court
noted that a state's evidence of a defendant's guilt and frequency of the
prosecutor's reference to a defendant's post-Miranda silence are factors
which should be analyzed in determining whether the Doyle error substantially
influenced the jury's verdict. Id. However, the Supreme Court has commented
that "if one cannot say, with fair assurance, that the judgment was not
substantially swayed by the error, it is impossible to conclude that
substantial rights were not affected"; Kotteakos v. United States, 328 U.S.
750 (1946), and if this Court is in "grave doubt" as to whether this
constitutional error had any substantial effect on the jury's verdict, it must
consider the error to have been harmful, and the Applicant must win. See

O'Neal v. McAninch, 115 S.Ct. 992 (1995). Due to the facts of this case and the egregiousness of the prosecutor's misconduct, Applicant maintains that this error did have a substantial influence on the jury's verdict. As stated above, and in the writ application, the prosecutor made frequent references to his silence throughout trial, and in the prosecutor's closing argument, he invited the jury to equate the defendant's silence with guilt by arguing that the defendant understood what he was doing. id. This error was not harmless, in fact, the prosecutor used the defendant's silence to defeat his insanity defense. id. It is undisputed that Applicant was pursuing an insanity defense. Finally, this egregious conduct by the prosecutor did not take place once, but repeatedly over the course of Applicant's trial, thereby denying him a fundamentally fair trial.

## CONCLUSION

Based on the above Applicant urges this Court to reverse the conviction, and vacate the sentence. Justice demands nothing less.

### PRAYER FOR RELIEF

For the foregoing reasons, Mr. Engle prays that the Court issue the writ, and to vacate his conviction and sentence and order that Mr. Engle be afforded a new trial within a reasonable time period, or be released from custody. Applicant has been deprived of basic fundamental right's and wishes to restore those right's back in this Court. Justice demands nothing less.

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above memorandum of law was sent by U.S. postal mail to DeWitt County District Clerk @ 307 N. Gonzales Street in Cuero, Texas. Zip code 77954: Executed on this the 18th day of September of 2017.

Kirk Ross Engle
Rt.2 Box 4400
Gatesville,TX.76597

Kirk R. Engle

16

90

*abeth Gardne,*

**DeWitt County District Clerk**
**307 N. Gonzales Street**
**Cuero, Texas 77954**
**Phone: (361) 275-0931**
**Fax No. (361) 275-0934**

**Deputies:**
**Esther Ruiz**
**Jessie Duruisseau**
**Rachael Hernandez**

**Leonides Vasquez**
**Jennifer Gamez**
**Chelsea Kirkland**



September 18, 2017

Hon. Jack W. Marr
Judge 24th Judicial District
Victoria County Courthouse
115 N. Bridge
Victoria, Texas 77901

Mr. Robert C. Lassmann
District Attorney
DeWitt County Courthouse
Cuero, Texas 77954

IN RE: Cause No. 15-11-12,329-A
24TH JUDICIAL DISTRICT
KIRK ROSS ENGLE
VS.
THE STATE OF TEXAS

Dear Gentlemen:

Enclosed please find a copy of an Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal Procedure, Article 11.07, Applicant's Motion Requesting that Portions of the Record that's Being Reference in his Writ Applicant be attached Hereto for all Purposes and Memorandum Brief in Support of Writ for Habeas Corpus filed September 18, 2017, in the above entitled and numbered cause.

Sincerely,

Tabeth Gardner
DeWitt County District Clerk
By *Leonides Vasquez*
Deputy

TMG/lv
Enclosures

xc: Mr. Kirk Ross Engle
TDCJ # 2051545
Hughes Unit
Rt. 2 Box 4400
Gatesville, Texas 76597

Received this the ___18th___ day of September, 2017 *Robert C. Lassmann*

**91**

Robert C. Lassmann
District Attorney *by:*
*Chyann Sammons*

CAUSE NO.15-11-12,329-A

| | | |
|---|---|---|
| EX PARTE | X | 24TH DISTRICT COURT |
| KIRK ROSS ENGLE | X | DEWITT COUNTY |
| | X | STATE OF TEXAS |

ORDER

On this day came on to be heard the above captioned application for writ of habeas corpus. The court, having reviewed the application, finds that there are no controverted, previously unresolved facts which need to be determined. The court, therefore, orders the clerk to forward the application to the Court of Criminal Appeals.

Signed this _20th_ day of _September_, 2017.

_Tyler Williams_
JUDGE PRESIDING

FILED
at ___9.30___ o'clock___ .M
SEP 22 2017
TABETH GARDNER, Clerk
Dist. Court, DeWitt County, Texas
By_____ Deputy

**92**

# *ı abeth Gardner*

**DeWitt County District Clerk**
**307 N. Gonzales Street**
**Cuero, Texas 77954**
**Phone: (361) 275-0931**
**Fax No. (361) 275-0934**

**Deputies:**
**Esther Ruiz**
**Jessie Duruisseau**
**Rachael Hernandez**

Leonides Vasquez
Jennifer Gamez
Chelsea Kirkland



September 22, 2017

Mr. Robert C. Lassmann
District Attorney
DeWitt County Courthouse
Cuero, Texas 77954

Mr. Kirk Ross Engle
TDCJ #2051545
Hughes Unit
Rt. 2 Box 4400
Gatesville, Texas 76597

IN RE: Cause No. 15-11-12,329-A
KIRK ROSS ENGLE
VS.
THE STATE OF TEXAS

Dear Gentlemen:

Enclosed please find a copy of an Order on Application for Writ of Habeas Corpus signed September 20, 2017, by the Hon. Kemper Stephen Williams in the above entitled and numbered cause.

Sincerely,

Tabeth Gardner
DeWitt County District Clerk
By: Rachael Hernandez
Deputy

TMG/rh
Enclosure

**93**

CAUSE NO. 15-11-12,329-A

| KIRK ROSS ENGLE | * | IN THE 24TH JUDICIAL |
| VS. | * | DISTRICT OF |
| THE STATE OF TEXAS | * | DeWITT COUNTY, TEXAS |

### CLERK'S CERTIFICATE UNDER ART. 11.07, SEC. 2(c), V.A.C.C.P.

This is to certify that the above numbered and entitled Application for Writ of Habeas Corpus was filed in this court on the 18th day of September, 2017, and that a copy of said petition was served upon the District Attorney's Office upon the 18th day of September, 2017; that further, as clerk of this court, I hereby certify that an Order on the Application for Writ of habeas Corpus has been entered by the trial court with a 35-day time limit from the filing of this petition.

So certified this the 23rd day of October, 2017.

_____
TABETH GARDNER, District Clerk

By _____
    Deputy



**94**

# CRIMINAL DOCKET

No. 15-11-1339-A

| | | DATE OF FILING | | |
|---|---|---|---|---|
| | | Month | Day | Year |
| | | Sept | 18 | 2017 |

Information, index or Indictment

BM INC. DALLAS FORM 010

| Number of Case | STYLE OF CASE | ATTORNEYS | OFFENSE | Minute Book | | WITNESSES |
|---|---|---|---|---|---|---|
| | | | | Vol. | Page | |
| 15-11-1339-A | THE STATE OF TEXAS | Pro Se | State Application for a Writ of Habeas Corpus | | | |
| | vs. | Kirk Russ Engle | | | | |
| | The State of Texas | Robert C. Lassmann | | | | |

Date of Orders

| Month | Day | Year | Was Stenographer Used | ORDERS OF COURT | Defendant | | Vol. Fee Book Page |
|---|---|---|---|---|---|---|---|

**September 18, 2017** Application for Writ of Habeas Corpus filed.

**September 18, 2017** Notice of filing sent to District Judge and District Attorney.

**Sept. 20, 2017** Order on Application for Writ of Habeas Corpus signed. **KSW**

**Sept. 22, 2017** Notice of filing sent to District Attorney and Defendant.

**October 23, 2017** Application for Writ of Habeas Corpus mailed to the Court of Criminal Appeals in Austin, Texas by certified mail, return receipt requested.

95

### CERTIFICATE

THE STATE OF TEXAS                  X

COUNTY OF DeWITT                    X

I, Tabeth Gardner, Clerk of the District Court, in and for DeWitt County, Texas do hereby certifiy

that the above and foregoing CLERK'S RECORD contains a true and correct copy of the proceedings had

in Cause No's. 15-11-12,329 and 15-11-12,329-A, styled THE STATE OF TEXAS VS. KIRK ROSS ENGLE and

KIRK ROSS ENGLE VS. THE STATE OF TEXAS, as same appears on file and/or record in the District Court

f DeWitt County, Texas.

Given under my hand and seal of said Court in DeWitt County, Texas, this the 23rd day of

October, A.D., 2017.



TABETH GARDNER, District Clerk
DeWitt County, Texas

By_____
    Deputy

**96**